JOSEPH W. TAFT

*v.*

THOMAS MYERSCOUGH.

*Opinion filed June 19, 1902—Rehearing denied October 8, 1902.*

1. BILLS AND NOTES—*what may be shown under plea of total or partial failure of consideration.* Under sections 9 and 10 of the act on Negotiable Instruments it is competent to show, under a plea of total or partial failure of consideration, that the defendant was induced to execute the instrument sued upon by the false and fraudulent representations of the seller as to the value or character of the commodity which formed the consideration.

2. SAME—*when tender of stock is unnecessary.* When the stock for which a note is given is entirely worthless there is a total failure of consideration, and it is unnecessary for the defendant in a suit on the note to show return or offer to return the stock.

*Taft* v. *Myerscough*, 92 Ill. App. 500, reversed. ·

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

JAMES F. HUTCHISON, for appellant.

MOSES, ROSENTHAL & KENNEDY, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This is an action of assumpsit, brought in the superior court of Cook county by the appellee, against the appellant. The declaration is in the usual form, and declares upon a promissory note signed by appellant for $4000, bearing date November 1, 1897, payable one year after date to the order of S. Hewitt, with interest at four per cent per annum, and by him endorsed and delivered to one Forbes, and by him to the appellee before maturity, for a valuable consideration. The defendant pleaded the general issue, and therewith a special plea, in which it is averred that the consideration for the note was five thousand shares of the capital stock of the British-American Prospecting and Developing Company, which appellant had been induced to buy from S. Hewitt by the false and fraudulent representations of said Hewitt that the company was the owner of a town site and certain mining properties and as to the value of said capital stock, which representations were willfully false and were known by said Hewitt to be false when made; that the company had no assets; that the stock had no value and that the consideration for the note had wholly failed; that in making such sale and procuring the note Hewitt

was acting as agent for Forbes and in collusion with him, and that he and Forbes, for the purpose of cheating appellant, made a pretended sale and transfer of the note to appellee; that such transfer was made after maturity and without consideration, and that appellee then had notice that the note was procured by fraud, and that appellee received the same for the purpose of aiding Hewitt and Forbes to cheat and defraud the appellant, and offered to return said capital stock,—to which plea a general replication was filed by appellee.

At the trial appellee introduced the note in evidence and rested. Appellant introduced evidence tending to show the purchase of the stock by him and the giving of the note in suit therefor, the making of certain representations by Hewitt as to the ownership by the British-American Prospecting and Developing Company of a town site and certain mining properties, and his reliance thereon; that said representations were false, in part at least; that said capital stock was of little or no value; that Hewitt was acting as the agent of Forbes in the sale of said stock and that appellee was not a *bona fide* purchaser of said note before maturity, for a valuable consideration, and tendered back to appellee, upon the trial, the certificates of stock received by him from Hewitt. The appellant then rested. Appellee offered no further evidence, but moved the court to instruct the jury to find the issues for the appellee upon the following grounds: "(1) That the appellant had not proved his special plea; (2) that he had not proved the allegation thereof to the effect that the pretended sale and transfer of the note was made after maturity, and that appellee had notice then that the note had been obtained by fraud, and that the same was transferred to him for the purpose of defrauding the appellant, and that the appellee had paid no consideration therefor, and received the note for the fraudulent purpose of aiding Hewitt and Forbes in accomplishing their design; (3) that the appellant had not

proved the allegation of his plea to the effect that Hewitt was acting as Forbes' agent and in collusion with him, and that he and Forbes, for the purpose of defrauding appellant, made a pretended sale and transfer of the note to appellee; (4) that appellant had not proven the allegations of his plea that the representations alleged were false or that said Hewitt knew them to be false when made; (5) that there was no evidence to show a tender of the stock by appellant to appellee or Hewitt at any time, and hence no rescission of the contract of purchase; (6) that the plea purported to be one of total failure of consideration, whereas the evidence showed the facts made out a case of only partial failure of consideration, if any failure at all, and that therefore the plea had not been proven." Thereupon the court granted said motion and instructed the jury to find the issues in favor of the appellee and to assess his damages at the sum of $4353, which was accordingly done and judgment rendered on the verdict for said sum, which judgment, on appeal, was affirmed by the Appellate Court, and a further appeal has been prosecuted to this court.

While the special plea filed by the appellant is inartificially drawn, no demurrer having been filed thereto but the appellee having joined issue thereon, we think it may be properly treated as a plea of total failure of consideration. Sections 9 and 10 of the Negotiable Instrument act enumerate four grounds of defense to an action upon bonds or other writings for the payment of money: (1) Where the bond is entered into without any good and valuable consideration; (2) where the consideration has wholly failed; (3) where fraud and circumvention have been used in obtaining it; and (4) where there has been a part failure of the consideration. (*Sims* v. *Klein*, Breese, 302.) And under this statute it is competent to show, under the plea of partial or total failure of consideration, that the purchaser was induced to execute the instrument sued on by the false and fraudulent representations of

the seller as to the quality, quantity, value or character of the property which forms the consideration that moves the contract, as that is one mode of showing a failure of consideration. (*White* v. *Watkins,* 23 Ill. 426; *Latham* v. *Smith,* 45 id. 25; *Richards* v. *Betzer,* 53 id. 466; *Gage* v. *Lewis,* 68 id. 604.) In *Latham* v. *Smith, supra,* it is said (p. 28): "When the fraud relates to the consideration, the defense must be for a total or partial failure of consideration moving the execution of the instrument." In *Richards* v. *Betzer, supra* (p. 469): "To constitute a failure of consideration there must be a warranty or a fraud practiced by the seller." And in *Gage* v. *Lewis, supra* (p. 613): "It is competent to show that the defendant was induced to execute the instrument by false and fraudulent representations, as that is one mode of showing a failure of consideration."

The consideration of the note was five thousand shares of the capital stock of the British-American Prospecting and Developing Company. The appellant testified: "Hewitt said the British-American Prospecting and Developing Company owned the town site of Michipicoten and owned ten mines there, and that they owned two mines in British Columbia and seven in the Klondike. He said that the stock had been sold in Toronto, and that there were seventeen men put up $100,000. The stock had been sold at par, and this stock that he had was the only stock that had ever been sold for less than par, and the Bank of Montreal had bought five thousand shares of that stock at par. He said the mines at Michipicoten they had gone far enough into them to find that they were very rich, and the mines of British Columbia, one of them was adjoining one of the richest mines there, and the mines in the Klondike were showing up big. He said that they had sold about all the stock that they wanted to sell; that they had got enough money now to go on and put up a plant at Michipicoten." Mr. Kiteley, the secretary and treasurer of the company, testified

that there had been no sales of the capital stock of the
company prior to the first day of November, 1897,—the
date of the sale of the stock by Hewitt to appellant.
Mr. Currie, a director of the company and who held nomi-
nally the position of general manager, testified that the
company had no title to any mining property, patents or
other evidence of title on the first day of November, 1897;
and Mr. McNaught, vice-president of the company, tes-
tified that he had no knowledge of any sales of the stock
of the company being effected prior to November 1, 1897;
that the stock was offered for sale, but none sold, so far
as he knew.    This evidence fairly tended to show that
Hewitt made representations to appellant which were
false and upon which appellant relied, and which rep-
resentations Hewitt must have known, or should have
known, to be false. *Hiner* v. *Richter*, 51 Ill. 299; *Thorne* v.
*Prentiss*, 83 id. 99.

The deposition of Hewitt, who procured the note to
be given, was read in evidence.    He stated he was sell-
ing the stock as the representative of Forbes, who was
to furnish him with money to pay all expenses connected
with his trip from Bradford, Canada, where he (Hewitt)
lived, to Chicago, where appellant lived; that he was to
account to Forbes for the stock at sixty cents on the dol-
lar of its par value if he sold over $500 worth; that the
only sale of stock of which he had any knowledge prior
to the sale made to appellant was a sale which he made
to his brother of five thousand shares at eighty cents
on the dollar.    It also appeared from the evidence that
the appellee was a small market gardener in Caledonia,
Canada, the home of Forbes; that he did not know the
maker of the note and had no knowledge of his financial
condition when he purchased it.    He made conflicting
statements as to the time when he claimed he became the
owner of the note and fixed three different dates for that
transaction, one of which was after the maturity of the
note.    He claimed he paid for the note in part with a note

given by himself, but could not remember the amount of the note he claimed to have given or whether it bore interest. This evidence fairly tended to prove that neither Forbes nor appellee was an innocent purchaser of the note for value, before maturity.

If the stock was entirely worthless, then there was a total failure of consideration, and it was unnecessary for the defendant to aver or prove the return of, or offer to return, the same. In *Wynn* v. *Hiday*, 2 Blackf. (Ind.) 123, which was an action of debt on a writing obligatory for the payment of money, the defendant pleaded that the obligation had been given for a pair of mill-stones fraudulently represented to be good but which were of no value. The plaintiff contended that where there is a plea of total failure of consideration the whole plea must be proved or the defense amounts to nothing. Blackford, Judge, said: "In this, we think, he is mistaken. If the defendant, under his plea, suitable to the case, of a total failure of consideration, prove, in addition to the fraudulent representations or to the breach of warranty, that the article is of no value or has been returned or tendered within a reasonable time, he defeats the action."

The value of the capital stock was a question of fact. From a consideration of this entire record we are of the opinion the evidence fairly tended to show that the consideration of the note had totally failed, and that the appellee was not an innocent purchaser thereof before maturity, for value, and that the court erred in directing a verdict for the appellee.

The judgments of the Appellate and superior courts will be reversed and the cause remanded to the superior court for a new trial.    *Reversed and remanded.*