EDNA BROWN, Respondent, v. METROPOLITAN
STREET RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, February 5, 1912.**

1. **NEGLIGENCE: Street Railways: Personal Injuries.** Plaintiff
sued for damages for injuries received when thrown from the
rear platform of an electric street car, by the sudden starting
of the car as she was about to alight therefrom at a regular
stopping place. The heel of her shoe caught on a projection
in the metal plate on the board step and tripped her and the
heel of the shoe was torn off. *Held* that plaintiff was entitled
to go to the jury on both the issue of the sudden starting
of the car and of negligence in operating the car with a
defective step.

2. ———: ———: **Instruction.** An instruction is not erroneous
where the only reasonable meaning of the word "thereon" in
a clause "the heel of one of her shoes caught thereon" is that
the word refers to the projection and not to the step.

3. ———: ———: **Damages.** A verdict for twenty-five hundred
dollars is not too much for continuously painful, permanent
and partially disabling injuries.

Appeal from Jackson Circuit Court.—*Hon. James H.
Slover,* Judge.

AFFIRMED.

*John H. Lucas* and *Clarence S. Palmer* for appel-
lant.

(1)  Plantiff's second instruction was vague and
ambiguous and, therefore, erroneous.  Belt v. Goode,
31 Mo. 128; Legg v. Johnson, 23 Mo. App. 590; Medlin
v. Brooks, 9 Mo. 106; State, to use, v. Laurie, 1 Mo.
App. 371; Railway v. Hansh, 12 Ill. App. 88; Fain v.
Cornett, 25 Ga. 184; City of Freeport v. Isbell, 83 Ill.
438; 4 Minor's Inst., part 1 (1878), p. 876; Gordon v.
City of Richmond, 83 Va. 436; Adams v. Reeves, 68 N.
C. 134; Thompson on Charging the Jury, p. 97, sec.
68.  (2)  Plaintiff's fourth instruction was erroneous

in submitting to the jury the question of permanent injury to plaintiff's nerves and nervous system. (3) Stokes v. Distilling Company, 64 Mo. App. 420; Lester v. Railway, 60 Mo. 268; Duke v. Railway, 99 Mo. 347; Bowles v. Lewis, 58 Mo. App. 649. The verdict is excessive.

*Boyle & Howell* and *J. S. Brooks* for respondent.

(1) Plaintiff's second instruction was not erroneous. It clearly and precisely defined the issue before the jury under the law and evidence. Devoy v. Railroad, 192 Mo. 197; Canady v. Railroad, 134 Mo. App. 282; Orcutt v. Century Bldg. Co., 201 Mo. 424; O'Gara v. Transit Co., 204 Mo. 724; Bell v. Railway, 125 Mo. App. 660; Millar v. Transit Co., 215 Mo. 607. (2) Plaintiff's fourth instruction was not erroneous. It fairly and correctly stated the measure of damage under the evidence in the case. Devoy v. Railroad, 192 Mo. 197; Rearden v. Railroad, 215 Mo. 105; Haas v. Railroad, 128 Mo. App. 79; Dye v. Railroad, 135 Mo. App. 254. (3) The verdict of the jury was not excessive. Barrie v. Cape Girardeau, 132 Mo. App. 182; Latimer v. Railway, 126 App. 70.

JOHNSON, J.—This is a suit by a passenger against a carrier to recover damages for personal injuries alleged to have been caused by the negligence of the carrier. The answer is a general denial and a plea of contributory negligence.

Plaintiff prevailed in the trial court where she recovered a judgment for twenty-five hundred dollars and the cause is here on the appeal of defendant.

The injury occurred in the afternoon of April 30, 1909, on the Independence line of defendant's street railway system in Kansas City. Plaintiff, her husband and sister were passengers on an eastbound car and were in the act of alighting at Fairmont Park

Junction, a regular stopping place, when she received a fall that caused the injuries of which she complains. The car had stopped and plaintiff was stepping from the rear platform to the first step when her fall occurred. She alleges two acts of negligence as causes of her fall, viz., first, that the car suddenly started forward as she was alighting and, second, that a bolt or screw fastening the metal plate to the board step underneath had worked loose and had projected above the plate resulting in the catching of plaintiff's heel as she stepped down on the plate and thereby tripping her. The evidence of plaintiff tends to support each of these charges and is contradicted by substantial evidence introduced by defendant. There is no dispute over the facts that plaintiff fell and that the heel of one of her shoes came off.

The evidence of plaintiff supports the conclusion that the heel was torn off by catching on the head of the projecting bolt while the evidence of defendant is to the effect that the bolt did not project, that the heel came off without the aid of any unusual condition but on account of its flimsy attachment to the shoe, and that it was the loss of the heel that caused plaintiff to fall. Counsel for defendant concede that plaintiff was entitled to go to the jury on each charge of the petition and that the instruction given at the request of plaintiff submitting the issue of the sudden starting of the car is free from error, but they complain of the instruction of plaintiff relating to the issue of negligence in operating the car with a defective step. That instruction is as follows:

"If the jury find from the evidence that on the 30th day of April, 1909, the defendant was a carrier of passengers for hire by street railroad, and used the railway and car mentioned in the evidence for such purpose, and if they further find from the evidence that on said day the defendant's employees in charge thereof stopped the car mentioned in the evidence,

a short distance from the station at Mount Washington, a station along said line of railway for the purpose of allowing plaintiff and other passengers to alight therefrom, if you find plaintiff was a passenger thereon, and that while said car was so stopped, if you so find, the plaintiff attempted to alight from said car and was in the act of so doing, *and that defendant had carelessly and negligently suffered and permitted a certain projection to be and remain on the step of said car at the place where passengers alight therefrom, and where plaintiff was attempting to alight therefrom, the heel of one of her shoes caught thereon, and she was thereby caused to fall from said car and upon the ground and was thereby caused to be injured,* and if the jury further find from the evidence that the plaintiff while in her attempt to alight from said car was exercising ordinary care for her safety in doing so under the circumstances shown in the evidence, then your verdict should be for the plaintiff.''

The italicized part of the instruction is criticized. Counsel contend it is so ambigous it did not require the jury to find that the catching of plaintiff's heel on the projection was the cause of her fall. The point is hypercritical. The only reasonable meaning of the word ''thereon'' in the clause ''the heel of one of her shoes caught thereon'' is that the word refers to the projection and not to the step. The meaning might have been better expressed but we do not believe the jury could have been misled into a misunderstanding of the term.

At the request of plaintiff the court instructed the jury on the measure of damages, ''that if under the evidence and instructions of the court you find in favor of plaintiff, you should assess her damages at such amount as you believe from the evidence will be a fair compensation to her for the pain of body and mind, if any, which she has suffered occasioned by her

injuries in question, if any, and for such pain of body and mind, if any, as in all probability she will suffer in the future, occasioned by such injuries, and for such permanent injury, if any, to plaintiff's back and her nerves and nervous system, as you may find was occasioned by said injuries, but the total damages which you may allow plaintiff must not in any case exceed the sum of ten thousand dollars.''

Defendant objects to this instruction on the ground that there is no evidence to support an inference that plaintiff's "nerves and nervous system" were permanently injured. We shall consider together this objection and the further objection that the verdict of twenty-five hundred dollars was excessive.

At the time of her injury plaintiff was thirty-eight years old and had always enjoyed good health. She was a large woman and her fall severely wrenched and strained important muscles in her back and lower abdomen, among them the broad ligament supporting the uterus and ovaries. The trial occurred over a year after the injury and at that time plaintiff was a sufferer from severe pains and soreness in the small of the back and abdomen, from frequent headaches, from irregular and very painful menses, and from a sympathetic nervous affliction of the throat and face.

We quote from her physician's testimony:

''Q. Doctor, referring now to the injury to the back, and particularly to the place where you said there was more soreness than other places,—what region of the back is that? . . . Where was the soreness in the back—the most pronounced soreness? A. In what is known as the small of the back, which is the lumbar region—a little above the waist line.

Q. In what degree, if at all, has that soreness continued, from the time you took hold of the case down to the present time? That is, has it come and gone,

or has it been there all the time? A. It has been there all the time that I have seen her.

"Q. Might that occur from a wrenching or twisting of the back? A. Yes, sir.

"Q. What is the effect of that condition on Mrs. Brown—this soreness and tenderness in the back—on her nervous system and her condition and health generally? A. It has had a profound effect on her system. The nervous system has been disordered. The soreness is in such a position that it makes her unable to sit normally in a chair, or lean back in a chair or seat.

"Q. It affects her assuming a normal position of the body? A. Yes, sir.

"Q. What effect would it have upon her bodily strength, and her ability to pursue the ordinary household duties? A. I believe it impairs her ability to perform her ordinary duties.

"Q. In your judgment, Doctor, what is the future progress of this case? Will she recover or not? A. I don't think that the conditions will ever become normal again. The condition in the back has been there a long time and is no better.

"Q. No better? A. It doesn't seem to yield to approved treatment.

"Q. As to this condition in the stomach—does that exist now or has that disappeared? A. The condition over the abdomen, in the muscles over the abdomen, has from time to time, I believe, cleared up. The soreness, as I remember has been relieved somewhat, but then there are times when it seems to come back. There seems to be some connection between the muscles of the abdomen and the neck—I would have to give you what she told me, in order to described that. . . .

"Q. Have you noticed any abnormal condition in the neck? A. No, sir, I have not.

161 App.—16

"Q. That is systematic? A. Yes, sir.

"Q. And you relied upon what she told you as to your judgment as to that? A. Yes, sir.

"Q. State whether or not there might be a condition of the face and neck resulting from this condition you have described in the abdomen? A. Yes, there might be a reflex,—a convulsive effect.

"Q. A reflex convulsive effect? Might that result from this condition in the abdomen? . . . A. Yes, it could come from that.

"Q. State whether or not that sort of condition might produce headaches? A. Yes, sir."

It is fairly inferable from this evidence that plaintiff's nerves and nervous system are permanently injured and consequently, we find that the instruction rests on a substantial evidentiary foundation.

We do not feel justified in pronouncing the verdict excessive. If plaintiff's evidence is to be believed, and its credibility was an issue for the jury to determine, we think the verdict awarded only fair compensation for the damages sustained. Twenty-five hundred dollars is not too much for continuously painful, permanent and partially disabling injuries.

. The judgment is affirmed. All concur.