MAITLAND v. TRAVER.

(Circuit Court of Appeals, Seventh Circuit.   October 7, 1913.   Rehearing denied January 12, 1914.)

No. 1961.

1. BILLS AND NOTES (§ 451*)—DEFENSES—SPECIAL PLEAS.

A notice of special defense, authorized in actions on notes and other instruments for the payment of money or property authorized by Hurd's Rev. St. Ill. 1905, c. 98, §§ 9, 10, is limited to the defenses that the instrument was made without valuable consideration; that the consideration has wholly or partially failed; and that fraud has been used in obtaining the instrument.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1342, 1343, 1365, 1366; Dec. Dig. § 451.*]

2. BILLS AND NOTES (§ 97*)—DEFENSES—FRAUD—WANT OF CONSIDERATION.

After defendant had been induced by plaintiff's representations, etc., to purchase certain mining property, a corporation was organized to take over the same.   Plaintiff agreed to sell the stock for the benefit of defendant and others and was to have 50,000 shares for his own benefit as promotion stock.   Thereafter, in order to terminate plaintiff's interest in the company, defendant agreed to purchase his stock, and executed a note for $25,000 therefor.   Held, that the purchase of such stock and the execution of the note was a separate transaction from the purchase of the properties and defendant's original investment therein, and hence evidence of plaintiff's alleged fraudulent representations; the fact that the properties had never paid, and that defendant was only entitled to such promotion stock on performance of his agreement to sell the balance of the stock, which he did not do, was inadmissible in defense of the note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 166–173, 175–181, 185–192, 196–198, 200, 202–205, 208–212, 1372–1376; Dec. Dig. § 97.*]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois; George A. Carpenter, Judge.

Action by Wilber H. Traver against Alexander Maitland.   Judgment for plaintiff, and defendant brings error.   Affirmed.

The plaintiff in error, Maitland, was defendant below in a suit brought by Traver, the defendant in error, for recovery upon a promissory note made between the parties, bearing date February 7, 1903, for the principal sum of $25,000, upon which the plaintiff below recovered judgment, pursuant to verdict of the jury, and this writ of error is brought for reversal of such judgment.

The errors assigned for reversal rest on exclusions of evidence offered on behalf of the defendant below as tending to prove facts averred in his notice of special matter of defense filed therein, summarized in the brief in substance as follows:

(1) Offers of evidence of conspiracy and fraud in the transactions.

(2) Offers to prove that a prior contract between the parties was still in existence and unperformed by Traver.

(3) Offers to prove that Traver and his associates had contracted to sell $300,000 worth of the capital stock of the corporation to be organized, and that they never did sell the same, or any part thereof.

(4) Offers to prove that Traver owned no stock in the Penobscot Mining Company at the date of the instrument sued on and had no right to stock in said company, and that the note in suit was entirely without consideration.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(5) Offers to prove that the fraudulent representations made to Maitland prior to the making of the notes and at the time Maitland bought the options for the mining properties "were continuously being made while he was buying and developing the properties, and that he was acting under and relying upon those representations when he signed the note sued upon."

(6) Offers to prove that Traver and other parties named entered into a conspiracy to induce and did induce Maitland to pay one Bradburn $35,000 by representing to Maitland that Bradburn had bought $10,000 worth of stock in a mining company to be formed and by later representing that Bradburn had not bought stock in said company, but had bought an interest in the total investment of $10,000 which at that time was worth $35,000, whereby Maitland was induced to pay to Bradburn such sum of $35,000, which sum so paid was divided between the conspirators mentioned, pursuant to their conspiracy.

Error is also assigned upon several paragraphs of the instructions to the jury, involving the same questions as the above-mentioned rulings.

The instrument in suit bears date February 7, 1903, but the testimony is in dispute whether the delivery thereof was not postponed until December, 1903, as referred to in a letter of transmittal identified in evidence, and the instrument reads as follows:

"In consideration of the sale and transfer and assignment to me by Wilber H. Traver of all his right and claim to receive fifty thousand shares of the capital stock of the Penobscot Mining Company of South Dakota as evidenced by an instrument of transfer, bearing even date herewith, executed by the said Wilber H. Traver, I hereby agree to pay to Wilber H. Traver the sum of twenty-five thousand dollars ($25,000) on or before four years from this date without interest. I reserve the right to make partial payments on the twenty-five thousand dollars in such amounts and at such time as I may see fit before the expiration of said four years.    [Signed]    Alexander Maitland."

The instrument of transfer referred to in the above instrument reads as follows:

"In consideration of $25,000 to me paid by Alexander Maitland of Negaunee, Michigan, receipt whereof is hereby acknowledged, I do hereby sell, assign, transfer and set over to Alexander Maitland 50,000 shares of the capital stock of the Penobscot Mining Company which are coming to me from the said Alexander Maitland under and by virtue of a certain contract dated February 2, 1903, between the said Maitland on the one part and myself and one Frank R. Byrns on the other part, and I do hereby release, acquit and forever hold free and harmless the said Maitland from any and all claims and demands of whatsoever kind and nature arising out of and by virtue of said contract.    "[Signed]    Wilber H. Traver."

Each of the above-mentioned assignments of error rests upon a "notice of special defense," interposed under the Illinois practice, stating in various forms that the "defendant will give in evidence and insist in his defense" that the instrument in suit was obtained "by fraud and circumvention" on the part of the plaintiff, and that the plaintiff and his associates (as named) "entered into a conspiracy to mislead, deceive, cheat, and defraud the defendant into buying the mines" and making the investments mentioned, with various specifications of the representations and promises relied upon in making such purchase of mining properties and investments for their development. The notice, however, neither states nor tenders proof to show that any representation so made and relied upon in reference to the mining properties, to induce the purchase and investment therein, were either false in fact or intended to mislead the defendant in any respect as to character, conditions, or value; nor does the notice raise any issue as to their actual character or value. Moreover, the only representation averred therein as false, in reference to an existing fact relied upon in making the purchases of and investments in the mining properties, relates to an incidental transaction with one Bradburn, in reference to which the notice states that the defendant was "further misled and deceived by the statement of plaintiff that he had procured one James Bradburn who would buy ten thousand dollars worth of said stock at once, without waiting until said proposed company was incorporated"; that the

plaintiff subsequently produced Bradburn's check for that amount and delivered it to the defendant, stating that it was given for such stock. It is further averred, in substance, that Bradburn subsequently denied and repudiated this transaction as a purchase of stock, and claimed that he had thereby purchased an interest in the mining properties; that Bradburn sued defendant for recovery of damages thereupon, and for settlement of such claim defendant paid $35,000 for a release thereof, pursuant to this plaintiff's advice to do so; that such transactions were conspiracies between the plaintiff and Bradburn to defraud the defendant; and that "the contract of February 2," 1903 (in reference to their respective shares in the promotion stock), was made "between defendant and plaintiff and Byrns for the purpose of" such settlement, and "did not in any way attempt to define the rights and interests of the parties signing said contract as between themselves."

The notice states, by way of summary or conclusion, as follows:

"Defendant will further show that, relying upon the representations of plaintiff and believing from all the aforesaid conversations and representations that plaintiff could and would sell forthwith 300,000 shares of the capital. stock of the Penobscot Mining Company to be organized, he (defendant) agreed to pay plaintiff the sum of $25,000 for the 50,000 shares of stock to which plaintiff would become entitled when he (plaintiff) had kept and performed his aforesaid promises and agreements but defendant will show that, by reason of failure of plaintiff to carry out his agreement and promises with defendant as aforesaid, the said stock was and is wholly and entirely worthless; that he (defendant) has been deceived and defrauded by the false and fraudulent representations of plaintiff; and that the writing in plaintiff's declaration mentioned was and is without consideration and was obtained from defendant by fraud and deception on the part of plaintiff.

"Defendant will further show that none of the properties has as yet shown any evidence of containing a valuable vein or veins of gold ore; that no ore of any considerable value has been as yet taken therefrom; that across a nearby gulch, and about five miles distant from said properties, is located a valuable gold-producing mine, in no way connected with the transactions of the parties hereto; that whether the vein or ore in that mine has a continuation on this side of said gulch is as yet unknown; that, if ore in valuable and paying quantities is not located upon said properties in the near future, they will be of no value whatever to defendant, and defendant will lose his entire investment of about $500,000 therein, made by defendant upon the aforesaid promises and representations of plaintiff and his said associates."

The proceedings at the trial, testimony received, and rulings thereupon, and offers of proof which were excluded by the trial court, are stated in the opinion.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

Norman H. Pritchard, Wm. P. McCracken, Jr., and George S. Steere, all of Chicago, Ill., for plaintiff in error.

M. F. Gallagher and Henry W. Wales, both of Chicago, Ill., for defendant in error.

SEAMAN, Circuit Judge (after stating the facts as above). The verdict and judgment against Maitland, the plaintiff in error and defendant below, award recovery upon his written agreement to pay Traver, plaintiff below, $25,000 on or before four years from its date. Although the agreement is dated February 7, 1903, the testimony of the parties is conflicting as to the actual date of making and delivery, whether in February or in December, 1903, but this difference between them bears only on the credibility of their respective versions of the transaction as submitted to the jury and settled by the verdict. The agreement (promissory note) recites, as the consideration thereof, "the

sale, transfer and assignment to me by Wilber H. Traver of all his right and claim to receive fifty thousand shares of the capital stock of the Penobscot Mining Company of South Dakota, as evidenced by an instrument of transfer, bearing even date herewith, executed" by Traver; and the instrument referred to, dated February 7, 1903, and signed by Traver, was produced by Maitland at the trial and appears in evidence. It describes the 50,000 shares of stock, thereby sold, assigned, etc., as "coming to me from the said Alexander Maitland under and by virtue of a certain contract dated February 2, 1903, between the said Maitland on the one part and myself and one Frank R. Byrns on the other part," and further states:

"I do hereby release, acquit and forever hold free and harmless the said Maitland from any and all claims and demands of whatsoever kind and nature arising out of and by virtue of said contract."

Both of these instruments were prepared in Chicago by Maitland's attorney, and execution and delivery by Traver of the transfer and release passing title to all interests in the premises which had accrued or were to accrue in favor of Traver are undisputed facts; and it is conceded that no payment has been made by Maitland on his agreement.

[1] The contentions for reversal rest entirely on alleged error in rulings of the trial court excluding testimony offered as matter of defense, under a "notice of special defense" filed on behalf of the defendant. This notice is a form of pleading certain defenses, in actions upon notes and other instruments for payment of money or property, authorized by statute in Illinois, as between the original parties. Sections 9 and 10, c. 98, Hurd's Rev. Stat. 1905. Vide R. S. 1845, p. 385, §§ 10, 11. It is settled by decisions of the Supreme Court of the state that the defenses which may thus be set up are: (1) That the instrument was made without any valuable consideration; (2) that the consideration has wholly failed; (3) that there has been "a part failure of the consideration"; and (4) that "fraud and circumvention have been used in obtaining" the instrument. Sims v. Klein, 1 Ill. (Breese), 302, 303; Taft v. Myerscough, 197 Ill. 600, 603, 604, 64 N. E. 711.

Thus the issue for review is limited to the inquiry whether testimony was expressly offered on behalf of the defendant and rejected by the court, which would tend to prove one or more of the above-mentioned defenses embraced in the notice.

In reference to the notice of special defense, we believe the utmost import of the various specifications of matters the "defendant will give in evidence and insist in his defense" may be summarized in these propositions: (1) That the agreement in suit was induced and obtained by "fraud and circumvention" and through "conspiracy" on the part of the plaintiff and his associates. (2) That the plaintiff was not entitled to any of the shares of stock purporting to be transferred to the defendant, and consideration for the agreement "has wholly failed." (3) That prior to such agreement, and early in the year 1902, the defendant had been induced by fraudulent representations and conspiracy on the part of the plaintiff and his associates to purchase gold-mining

properties (named) in South Dakota, had taken titles thereto, and invested upwards of $500,000 in and about their development, without success or reimbursement in any manner. (4) That a purported corporation, Penobscot Mining Company, had been organized by Maitland, Traver, and one Byrns (to take over the mining properties when transferred by Maitland), with $500,000 of capital stock, whereof $300,000 was to be "treasury stock," which Traver represented and agreed would be sold by him to outside parties and the proceeds applied to reimburse Maitland's investment, and the remaining $200,000 to be issued to the incorporators after Maitland had been reimbursed, $100,000 to Maitland and $50,000 each to Traver and Byrns; and that the agreement of Traver to sell the treasury stock for reimbursement of Maitland was in full force entirely unperformed and entered into the agreement in suit and was relied upon to give value to the transfer, but remains wholly unperformed, so that the transfer is worthless. (5) That the mining properties so purchased by the defendant have shown no evidence of value, and whether they contain ore of value "is as yet unknown."

At the trial, the defendant Maitland testified at considerable length, detailing the circumstances of his purchases of the South Dakota gold-mining properties and of his investments for erection of a mill and development of the mines, together with representations and agreements on the part of the plaintiff and his associates which had induced him to make such purchases and investments; the court having overruled at that stage the objections raised to such testimony.

[2] It expressly appears therefrom: That all purchases were made from outside parties and his entire investments made long prior to the transaction in controversy, with titles preserved in him; that operations had been carried on throughout the year 1902 under his control, direction, and expense; that the corporation organized to take over the properties, with capital stock provided for as described in the notice of defense, had proceeded no farther than to place the stock in the hands of Maitland, to hold until it was disposed of as the parties had stipulated; that Traver had agreed to sell the treasury stock to outside parties for proceeds to be applied for reimbursements of Maitland; that Traver and Byrns stipulated in writing that Maitland was to be reimbursed for his cash investments "before there is to be any payments in the form of dividends or otherwise, to the promotion stock interests"; that Maitland had become dissatisfied with the status of affairs, and early in February, 1903, on his return with Traver from a visit to the mines, negotiations occurred between them for purchase by Maitland of Traver's claim of interest in the properties; and that such negotiations were continued in Chicago and resulted in the agreement in suit.

Upon this showing on the part of the defendant of the state of facts under which the agreement was concluded, the trial court became satisfied that the negotiations and transaction were separated from and independent of the prior transactions and investments, in time, purpose, and consideration; that the defense predicated thereon was inadmissible; and, ruling in conformity with that view, the above-men-

tioned testimony was excluded from submission to the jury, together with various tenders of proof in further support of the defense so predicated.

The defendant, however, was permitted to testify and testified in reference to the circumstances and conversations between the parties leading up to and attending the execution of the agreement in suit, including therein his version of an agreement by parol between them that the note was not to be paid when due unless Maitland (the promissor) "had previously received his money, or words to that effect," which version was denied by the plaintiff's testimony; and the court, assuming that an issue of fact arose in respect of this alleged oral understanding, submitted it to the jury for determination, and their verdict was adverse to such contention. Whether this testimony was admissible, in any view, to affect the instruments so executed by both parties may best be considered under the other branch of the defense. Thus the contract terms for payment of $25,000, if not otherwise conclusive, are settled by the verdict; and it is likewise settled, both by evidence and verdict, that the entire consideration entering therein was purchase and release of the promotion share of Traver in the venture (including his retirement from the corporation), which interest appeared, by written agreement between the parties, as 50,000 shares, or one-fourth of the "promotion stock," to be effective only when Maitland had been reimbursed for his investments. Its value was plainly understood by both parties to be problematical, contingent on developments of the mines, as referred to in the notice of defense, and it is equally clear that the purchase and release was treated and regarded by both as a valuable and sufficient consideration for the note, and that the benefits thereof were so accepted and retained by the defendant for his purpose of reorganizing a corporation to take over the mines, as disclosed by his testimony.

In the absence of evidence, either produced or expressly offered, tending to prove that execution of their agreement was obtained by "fraud and circumvention" on the part of the plaintiff (as the notice of defense repeatedly states the "defendant will give in evidence and insist in his defense"), we are of opinion that the testimony and offers of testimony in support of the averments of fraudulent representations and conduct in the transactions of the previous year were rightly excluded by the trial court. The bill of exceptions shows neither testimony nor offers of testimony tending to support the charge of fraud entering into the agreement; and it is conceded in the brief, submitted on behalf of the defendant (plaintiff in error), that such defense failed for want of proof. Nevertheless, it is contended that the testimony so excluded was admissible as tending to support the remaining defense set up under the statute, namely, that the consideration for the agreement "has wholly failed." The theory upon which this contention is urged by counsel is stated in their argument in two propositions, in substance as follows: (1) That the prior representations of Traver, both of "his ability to sell stock" and of purchasers "he had secured" to take stock, "had a direct bearing on the value of Traver's right to

promotion stock, which he was to receive only after he had sold the so-called treasury stock," and the fraud as to the value of the stock "constitutes failure of consideration." (2) That the note in suit "was one step only in a conspiracy entered into * * * to defraud Maitland through this mining scheme," and the representations which induced his prior investments in the properties, as the earlier "steps taken in pursuance of this design are admissible as being part of the same general transaction." If neither of these claims is tenable, it is obvious that error is not well assigned, and we are of opinion that both are not only fallacious and beside the issue presented by the suit, but that both are inconsistent with the conceded facts, and the second proposition is not within any tender of proof at the trial.

The testimony of the defendant had established (as before stated) that the representations referred to were made and the object consummated by the investments of Maitland in the mining properties, together with the provision for the promotion shares of Traver and Byrns in the corporation upon conditions stated, all apart from and long prior to the negotiations which resulted in the present contract for release of Traver's interest and participation in the venture. With this last transaction between these parties so separated from the alleged representations, both in character and event, its independence therefrom was in effect conceded by counsel for the defendant at the trial, in answer to an inquiry by the court, namely, that it was not claimed to have been within the contemplation of either party when the representations were made and acted upon. So, whatever may have been the bearing and force of these representations in the original transactions, as stated in the notice, we believe them to be irrelevant and without force for defense against the new contract, differing entirely in purpose and effect from the prior transactions, described in the notice as intended, induced, and accomplished through such representations.

Recurring to the notice of defense, its charges of fraud and conspiracy rest wholly on the representations there specified as inducing his investments in the property, and no doubt is entertainable that most of such representations are mere expressions of opinion and promises which do not amount to actionable fraud under the averments. For the purposes of this inquiry, however, we lay aside the question whether any of the representations stated support these charges, and proceed on the assumption that one or more thereof may be sufficient to that end, in reference alone to the original transactions. The testimony and offers of testimony which were excluded, with the possible exception of two offers to be separately considered, are predicated alone on the charges of fraud in the prior transactions, and we believe such rejection was required pursuant to the elementary rule of evidence against the reception of irrelevant matter to defeat or affect the independent contract. It is undoubted, of course, that competent evidence would be admissible to prove that any of these prior representations entered into and became part of the consideration for this contract by express agreement of the parties, thus making it a

new representation or promise for the new purpose, but the original representations have no force in that direction, as we understand to be the contention in each of the above propositions.

The last-mentioned view, that the prior representation must be renewed to become effective for the new purpose, appears to have received some measure of recognition in framing the defense, in the attempt to prove the agreement by parol, that payment of the note was conditioned upon the performance by Traver of his pre-existing promise to sell the treasury stock for reimbursement of Maitland's investment. While that version of the transaction was submitted to the jury and settled adversely, it is contended that the defendant became entitled, through such testimony, to submission as well of the prior representations and agreement referred to, so that error was committed in its exclusion. We believe it to be sufficient to remark, in answer to this proposition, that the consideration for the note was distinctly stated in writing, in both instruments, and, no "fraud or circumvention" entering into the execution (as conceded), extrinsic testimony to change their terms or effect was inadmissible, under any theory of the issues.

The record shows two offers of proof, above referred to as possible exceptions from the theory of the other offers, which were so urgently pressed at the trial that we have reserved them for special mention, although not impressed with either tender as presenting a meritorious question: (1) One of these offers was "to show that said mining properties have never paid, and have been shut down for upwards of five years, and are without value as mining properties or for any other purpose." On objection interposed that this was "a variance from the notice of defense," an amendment of the notice was allowed to conform thereto, but the offer was nevertheless rightly overruled as irrelevant. Laying aside its obvious inconsistency with the prior averments and testimony, it was both conceded and settled by the undisputed evidence that both parties entered into the contract in suit, equally well informed as to developments of ore in the mines, and that their producing value was "entirely problematical," and without concealment or fraud entering into such contract, so that liability for performance could not be affected by the proposed proof of their present value or want of value. (2) The other offer was thus stated: "To prove and show that at the time of the execution" of the instruments "the plaintiff owned no stock in the Penobscot Mining Company," had "no right to the stock," and the note given therefor "was entirely without consideration." For support of this offer, however, counsel relies upon the prior agreement between the parties postponing title to the stock until the treasury stock had been sold for reimbursement of Maitland, so that the foregoing ruling against its admissibility is applicable alike to this offer. As the entire interest of Traver in the undertaking was obtained in conformity with the mutual purpose of the bargain, with full understanding of its character, and no fraud, concealment, or mistake entered into the contract, under well-recognized general principles any failure of ultimate benefit or title through the purchase does not constitute failure of consideration to relieve from

liability upon the contract, and such is the settled rule as well in Illinois. Kerney v. Gardner, 27 Ill. 162, 168; Cobb v. Heron, 180 Ill. 49, 54, 54 N. E. 189. This principle is 'aptly stated by Chief Justice Mitchell, in Ingalls v. Miller, 121 Ind. 188, 22 N. E. 995:

"That one who, with all the facts before him, and without fraud, oppression, or imposition, decides his own case against himself cannot afterwards appeal to the courts to reverse his own decision."

We are of opinion, therefore, that error is not well assigned for reversal, and the judgment of the district court is affirmed.