## C. M. SELEY, GUARDIAN, V. MRS. SALLIE HOWELL.

### No. 4517. Decided June 23, 1926.

(    S. W.,    ).

**1.—Insanity—Guardianship Support of Family—Dependent Parent.**

The dependent mother of an insane person is entitled to the benefit of Article 4275, Revised Statutes, 1925; and the County Court administering his guardianship may, in its discretion, make an allowance for her support to be paid by the guardians out of his ward's estate. The family entitled to benefit under that statute is not limited to persons for whose support the ward if of sound mind, would be legally liable. (Pp. 588-591).

**2.—Same—Case Stated.**

A person incurably insane and diseased as result of service as a soldier in the world war was confined in a Government hospital. Appellant, as guardian of his estate, held some $8,000, and received from the Government a monthly allowance of $100 for his benefit. His mother was aged, infirm and poor. *Held*, that an allowance by the County Court of $50 per month, to be paid by the guardian out of his estate for the mother's support was warranted by the statute, and was properly made. (Pp. 585-591).

Questions certified from the Court of Civil Apppeals for the Tenth District, in an appeal from McLennan County.

The Supreme Court referred the question certified to the Commission of Appeals, Section B, for its opinion thereon, and here adopts same and directs that it be certified as the answer of the Court.

*Hilton Howell,* for appellant.

There is no legal liability upon the estate of an adult non compos mentis to support or contribute to the support of his mother, regardless of the mother's dependency upon him for support and maintenance. Munzenberger v. Boehme, 2 Posey 389; Newton v. Newton, 25 S. W., 159; Taylor v. Bouleware, 17 Texas, 74; Vernon's Sayles' Civil Statutes, 1914, Art. 4246.

Appellant takes the position that although within the broad construction of the homestead exemption statute, Van Buren Howell, and his mother, would be considered a family, yet, Art. 4246, Vernon's Sayles' Civil Statutes, 1914, was intended to provide only for the support of the insane person's immediate family, those whom the insane person was legally liable to support.

*Eric Pape,* legal adviser of the Dallas Regional Office of the

U. S. Veterans' Bureau, as amicus curiae, in support of appellant's position.

That there is under the common law no legal obligation on the part of the child to support a parent, however destitute or needy the parent may be, is well settled. 29 Cyc., 1619; 20 R. C. L., 587, par. 4; Duffy v. Yordi (Cal.) 4 L. R. A. (N. S.), 1159 and note; 9 American Annotated Cases, 1017 and note.

Unless the Statutes of the State of Texas create a legal obligation on the part of Van Buren Howell to support his mother, the County Court is without authority to direct the guardian to pay her any sum out of the estate of her son for her support and maintenance. Article 4246 of the Revised Civil Statutes of the State is relied upon by the appellee in support of the judgment of the District Court. This Article provides that the court by which any person of unsound mind or habitual drunkenness is committed to guardianship may make orders for the support of his family and the education of his children when necessary. The term "family" as used in this sense clearly refers to the member of the family of an insane person for whose support and maintenance he is legally liable; that is, his wife and minor children.

To hold that the Statute meant otherwise would be placing upon an insane person a burden that does not rest upon a sane person under the same circumstances. Such a Statute would be unconstitutional as class legislation. The Statutes of this State under the general title of guardian and ward do not purport to create by any Article or Section thereof any legal obligation upon a minor or an insane person, but such Statutes are for the administrative direction of the probate courts and guardians in handling the estates of minors and incompetents. The Statute referred to is clearly not sufficient to create a legal obligation upon the part of an insane person to support anyone for whose support he is not by some other provision of law legally liable.

If the court may order a guardian to support a father and mother of an insane person under the provisions of the Statute referred to, then it might likewise direct the guardian to provide for the support of his brothers and sisters, uncles and aunts, nieces and nephews and, indeed, of persons who were not even related to the insane person, provided such persons were constituent members of the insane person's household.

That a guardian may not discharge moral obligation as distinguished from legal obligation is clearly and definitely settled. Under our law there can be nothing more than a moral obligation on the part of a child to support a parent and this is true even though a parent might be a member of his household or family. However, as above stated, the record in this case is not sufficient to show that Mrs. Sallie Howell was a constituent member of the family of Van Buren Howell.

*Barney A. Garrett,* for appellee.

An invalid widow, living with and wholly dependent for her support and maintenance upon her unmarried son, who recognizes and discharges his obligation, whether legal or moral, to support and maintain her, constitutes a family with the son as head of the family, within the meaning of Revised Civil Statutes, 1925, Art. 4275. American National Bank of Austin v. Kruger, 71 S. W., 784; Arnold v. Waltz, 53 Iowa, 706; Bouvier; Brokaw v. Ogle, 170 Ill., 115; Constitution, Art. 16, Sec. 50; G., H. & S. A. v. Ford, 54 S. W., 37; M., K. & T. v. O'Connor, 78 S. W., 374; Parsons v. Livingston, 11 Iowa, 104, 77 Am. Dec., 135; Poor v. Ins. Co., 211 Fed., 432; Rev. Civ. St., 1925, Art. 4275; Roco v. Green, 50 Texas, 483; Tyson v. Reynolds, 52 Iowa, 431; Vernon's Sayles' Civ. St., Arts. 4698-5246, Sec. 15; Webster's Dictionary; Wilson v. Cochran, 31 Texas, 680; Workmen's Compensation Laws; Wolfe v. Buckley, 52 Texas, 641.

MR. JUDGE SPEER delivered the opinion of the Commission of Appeals, Section B.

This cause is before the Supreme Court upon the following certificate from the Court of Civil Appeals for the Tenth District:

"This is an appeal by C. M. Seley, guardian of the estate of Van Buren Howell, N. C. M., from an order of the District Court directing him to pay Mrs. Sallie Howell, appellee herein, out of the estate of his ward the sum of $50.00 per month for her support.

"Van Buren Howell is a disabled veteran of the World War. He is a person of unsound mind and guardianship on his estate is pending in the County Court of McLennan County, Texas. Appellant, C. M. Seley, is his legal guardian and appellee, Mrs. Sallie Howell, is his mother.

"Van Buren Howell is a bachelor, ——years of age. He

is incarcerated in the United States Government Veterans' Hospital No. 78 for World War Veterans, at Little Rock, Arkansas, at a cost to his estate of $25.00 per month. In addition to being insane, he is suffering from a disease occasioned by his service in the World War, which afflictions are considered incurable. Mrs. Sallie Howell, his said mother, is past seventy-three years of age. She is an invalid and in such delicate health that she is practically helpless and is under the constant care of a physician. She is unable to do any kind of work and requires the constant attendance of a nurse. There is no reasonable probability that her condition will change for the better during the remainder of her life. She has no income except $20.00 per month allowed and paid to her by the United States Government by reason of her dependency upon her said son. She has no property except a very small house in the city of Waco. This house is poorly furnished and too small to accommodate anyone except her and her nurse. She has no means outside of her allowance out of which to pay the taxes and insurance on this house. She is a widow. For many years prior to this time, except while absent serving in the war and since he has become insane, her said son, Van Buren Howell, lived with her in this home and supported and cared for her. During all this time she has been wholly dependent upon him for support, except for an occasional contribution from another son. This son is also a bachelor, about forty-five years old. He is an unskilled laborer and remains away from home practically all the time. The exact amount of contributions made by him in the past is not shown, but the circumstances indicate that they have been trivial and wholly insufficient to so supplement her allowance of $20.00 a month as to afford her necessary support and care and attention. Her other children are daughters, married and living in a distant part of the State. All of them are in very poor financial circumstances and are unable to contribute and do not contribute to Mrs. Howell's support. Aside from these relatives, Mrs. Howell has no one to whom she can look for assistance of any kind.

"The estate of the ward amounts at the present to about $8,000.00, most of which is invested in vendor's lien notes, well secured. The remainder, amounting to some $2,000.00, is cash in bank.

"Compensation has been awarded to the said Van Buren Howell by the United States Veterans' Bureau in this case

in the sum of $100.00 per month.    Out of this $100.00 per month the $20.00 allowed for the support of Mrs. Howell is paid to her, as hereinbefore indicated, and the remaining $80.00 is paid to said guardian.    The sum so allowed is the largest amount which said Bureau permits to be deducted from the compensation awarded a disabled soldier for the support of a dependent mother.    Said ward carried War Risk Insurance and an additional sum of $57.50 per month is paid to said guardian on account of such insurance.

"At the request and suggestion of some official of the Veterans' Bureau at Washington, D. C., Mrs. Howell, on March 14th, 1925, made application to the County Court of McLennan County, Texas, where such guardianship is pending, for an order directing the guardian to pay her $50.00 per month out of said estate for her support and maintenance.    This order was granted and the guardian directed and authorized to pay and did pay to Mrs. Howell $50.00 per month until on or about July 1st, 1925.    Subsequently, the local director of the Veterans' Bureau at Dallas, Texas, requested the guardian to file a motion to have said order granting said allowance for the support of Mrs. Howell rescinded.    Said motion was heard on the 8th day of October, 1925, and was granted and said order rescinded.    Mrs. Howell appealed from said order to the District Court of McLennan County, Texas.    Her appeal was heard on the 13th day of October, 1925.    The court entered judgment thereon, in substance, that the application of said guardian for rescission of said order be in all things overruled, and that he be, and was thereby directed and ordered to pay to Mrs. Sallie Howell $50.00 per month, as originally provided in the order of the County Court, and that such payments include $50.00 per month for the three months during which no payments had been made, and that said order be certified to the County Court below for observance.

"The guardian presents a single assignment of error, which assignment is as follows:

" 'The court erred in his judgment and decree directing an allowance of $50.00 per month to be paid out of the estate of Van Buren Howell for the support and maintenance of his mother, Mrs. Sallie Howell, for the reason that the undisputed facts show that Mrs. Sallie Howell is the mother of Van Buren Howell, and there is no legal liability upon the part of a child to support his parent and therefore no legal liability upon the part of the estate of Van Buren Howell to support or

contribute to the support of his mother, Mrs. Sallie Howell, contestant, and the judgment of this court is therefore contrary to the law and the facts.'

"Briefs have been filed in this court by both appellant and appellee, and in addition thereto, Mr. Eric Eades, legal adviser of the Dallas Regional office of the United States Veterans' Bureau, has, under leave of this court, filed a brief herein as amicus curiae. The transcript in the case and a copy of each of said three briefs are ordered transmitted to the Supreme Court, together with the questions herein certified, and said transcript is made a part of this certificate.

"Appellee, Mrs. Howell, claims a right to said allowance for her support under the provisions of Article 4275 of the Revised Statutes, which is as follows:

" 'The court by which any person of unsound mind or habitual drunkard is committed to guardianship may make orders for the support of his family and the education of his children when necessary.'

"She claims that she is a member of the family of the ward, within the meaning of that term as used in said article, and entitled under the terms thereof, in the discretion of the court, to an allowance for her support out of his estate.

"Appellant and the said legal adviser deny her claim and assert that the term 'family' as used in said article should be construed to include only persons for whose support the ward is legally liable, that is, a wife and minor children.

"The contentions of the respective parties are fully set out in their respective briefs and need not be further recited here.

"This court deems it advisable to certify to the Honorable Supreme Court for determination the following questions, material to the disposition of this appeal:

### FIRST QUESTION.

"Is appellee, Mrs. Sallie Howell, as the dependent mother of said ward, entitled to the benefits of said article, and in the discretion of the court, to an allowance for her support out of his estate?"

### SECOND QUESTION.

"Should the judgment of the District Court, under consideration in this appeal, be affirmed?"

As indicated in the certificate, the answers to the questions

submitted will require a consideration of Article 4275, Rev. Civ. Stats. of Texas, 1925, which is as follows:

"The court, by which any person of unsound mind or habitual drunkard is committed to guardianship may make orders for the support of his family and education of his children when necessary."

Indeed, the only authority which the guardian of such person has, or which the probate court itself, as to that, has, if it exists, must be found in the statute quoted. The court is given authority to make orders for the support of the "family" of the person of unsound mind, and the education of his children when necessary, but the statute nowhere defines the word "family" in this connection. By express law, one rule which shall govern in the construction of all civil statutory enactments is "that the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice." Rev. Civ. Stats., 1925, Art. 10, Sec. 8. The evident object of this statute was to enable the probate court adjudging one a non compos mentis to make orders for the support of his family and the education of his children when necessary, to the end that such support and education will be continued as before the adjudication so far as necessary and so far as the value of the estate will reasonably justify. It is the contention of the guardian that the statute does not confer authority on the court to make an order for the support of any family except such family as that for whose support the ward would under normal conditions be legally liable, while on the other hand the appellee contends that the word "family" is used in a broader sense and will include the ward's mother under circumstances such as are here shown. If the Legislature had intended to limit the power of the court to make orders for the support of such persons only as the ward was legally liable to support, it could easily have so stated. It could have limited the benefits of the order to husband, wife, children or other members for whose support the ward was legally liable, but it has not done so. It has used the word "family" broadly. That word is flexible and its meaning will be governed largely by the context of the act embracing it. Webster defines family as,

"The body of persons who live in one house and under one head or manager; a household, including parents, children and servants; those descended from a common progenitor; a tribe, clan or race; kindred; house; as the human family; a group

comprising immediate kindred; especially the group formed of parents and children, constituting the fundamental social unit in civilized societies; a group of kindred or closely related individuals or groups of individuals."

Bouvier defines family as follows:

"Father, mother and children; all the individuals who live under the authority of another, including the servants of a family." Poor v. Insurance Co., 211 Fed., 432.

In the Homestead Cases, Wilson v. Cochran, 31 Texas, 678, the Supreme Court said of the term,

"It was most certainly used in its generic sense, embracing a household composed of parents and children or other relatives, or domestics and servants; in short, every collective body of persons living together within the same curtilage, subsisting in common, directing their attention to a common object, the promotion of their mutual interests and social habits. These must have been the characteristics of the 'family' contemplated by the framers of the constitution in engrafting different provisions upon it. It is besides the most popular acceptation of the word and is more fully in unison with the beneficient conception of the political power of the State, in making so human and so wise a concession as that of the inviolability of a homestead from all invasion by legal process."

"In Roco v. Green, 50 Texas, 483, the Supreme Court declared:

"From the authorities the following rules to determine when the relations of a family, as contemplated by law exists, are deduced: (1) It is one of social status, not of mere contract. (2) Legal or moral obligation on the head to support the other members. (3) Corresponding state of dependence on the part of other members for their support."

"This holding has been often approved. Hutchenrider v. Smith, (Com. App.) 242 S. W., 204; Hall v. Fields, 81 Texas, 558, 17 S. W., 82; Wolf v. Buckley, 52 Texas, 648; Barry v. Hale, 21 S. W., 784; Clark v. Goins, 23 S. W., 703; First Nat'l. Bank v. Sokolski, 131 S. W., 818; Wilkins v. Briggs, 107 S. W., 135; Drought v. Stallworth, 100 S. W., 188; American Nat'l. Bank v. Kruger, 71 S. W., 784. The same liberal interpretation of the term has been given by the courts of other states construing their constitution or statutes. State v. Hays, (Minn.) 117 N. W., 615; Colter v. Luke, (Mo.) 108 S. W., 608; Klee v. Klee, 93 N. Y. Supp., 588; Jarboe v. Jarboe,

(Mo.) 79 S. W., 1162; Lawson v. Lawson (Calif.), 115 Pac., 461; Sheehy v. Scott (Iowa), 104 N. W., 1139; Elliott v. Thomas, 143 S. W., 561.

The right and power of the court to make the order complained of depending as it does upon the statute being construed, and our construction being that appellee under the facts shown is a member of the family of her afflicted son, Van Buren Howell, we see no reason why the judgment should not be affirmed. Indeed, it would be a great injustice in the instant case if the statutes were so inflexible as to exclude an order, the objects of which were so beneficent. Van Buren Howell was under no legal obligation to support his aged and dependent mother, but he at all times recognized that finer and, in a sense, superior moral obligation and was accordingly supporting her until his adjudication. The construction we have given this statute merely makes possible the continued support that the unfortunate son undoubtedly would have bestowed upon his mother but for his overwhelming misfortune. His "family," within the meaning of the statute governing, was the group constituted through his own selection and recognized by his free choice, as it existed at the time of his commitment. We therefore recommend that both questions propounded should be answered in the affirmative.

Opinion of the Commission of Appeals answering certified questions adopted and ordered certified to the Court of Civil Appeals.

*C. M. Cureton,* Chief Justice.