STATE ex rel. EDWARD T. YOUNG v. AMBROSE HAYS.[1]

August 28, 1908.

Nos. 15,622—(21).

**Removal of County Superintendent of Schools.**
The county commissioners have no power to remove the county superintendent of schools. They can only fill the office after it has been vacated in proper judicial proceedings, or by the act of the incumbent.

**Incompatibility of Offices.**
Incompatibility of offices does not depend upon the physical inability of one person to discharge the duties of both offices. The test is the character and relation of the offices, whether the functions of the two are inherently inconsistent and repugnant.

**Quo Warranto.**
In quo warranto proceedings to determine the right to the office of county superintendent of schools, it is held that the evidence did not show that the respondent had ceased to be a resident of the county in and for which he had been elected, and thereby vacated his office.

Upon information of the attorney general this court issued its writ of quo warranto directed to Ambrose Hays, requiring him to show by what right he held the office of county superintendent of schools of Le Sueur county. Writ discharged.

*Edward T. Young,* Attorney General, and *A. J. Edgerton,* for relator.

*Francis Cadwell* and *Charles C. Kolars,* for respondent.

ELLIOTT, J.

This is a quo warranto proceeding commenced in this court to determine the right of the respondent, Ambrose Hays, to the office of county superintendent of schools of Le Sueur county, Minnesota. The respondent was elected county superintendent of schools of Le Sueur county at the November general election in 1906 for a term of two years from the first Monday in January, 1907. He duly qualified, and on January 7, 1907, entered upon the discharge of his duties. It is alleged in the writ that on January 5, 1908, he accepted

[1] Reported in 117 N. W. 615.

and entered upon the duties of superintendent of the public schools of Mountain Lake, in this state; that he performed the duties of such superintendent until February 5, 1908, and that during all that time his office at Le Sueur Center, in said Le Sueur county, was closed; that during all that time he was an inhabitant and citizen of Mountain Lake, and that he neglected to perform the duties of county superintendent of Le Sueur county; that from January 5 to February 5, 1908, he abandoned said office, and that it had become and was vacant; that a request was made upon the respondent to return to Le Sueur county and resume his duties, and that he refused so to do; that the board of county commissioners on February 5, 1908, declared the office vacant and appointed one J. A. Anderegg to said office, and that Anderegg qualified and demanded possession of the office, which was refused.

The respondent in his answer admits his election and qualification, denies that the office of county superintendent is vacant, as stated in the writ, or that he neglected to perform the duties thereof, as alleged or otherwise, and alleges that at all times since his election he has been a resident, a legal voter, and an inhabitant of Le Sueur county. He also denies that he ever ceased to be an inhabitant thereof, and that he ever became an inhabitant and citizen of Mountain Lake, Minnesota.

1. The question of the effect of the neglect to perform the duties of county superintendent could not be determined in this proceeding, and therefore the only question for our determination is whether, at any time since his election in 1906, the respondent, Hays, ceased to be an inhabitant of Le Sueur county, and thus vacated the office by operation of law. The action of the county commissioners in passing the resolution declaring the office of county superintendent vacant had no effect upon the rights of the respondent. The county board had no authority to vacate the office. Its powers are confined to filling an office after it has been vacated by proper judicial proceedings or by the act of the incumbent. The governor of the state only has power to remove such an officer for cause. R. L. 1905, §§ 425, 2668.

2. Under the rule which prevails in this state, the offices of county superintendent of Le Sueur county and superintendent of schools

of Mountain Lake, Cottonwood county, even if the latter is an office, are not incompatible. The one is not subordinate to the other, and no necessary antagonism would result from the attempt of one person to discharge the duties of both offices. Kenney v. Goergen, 36 Minn. 190, 31 N. W. 210. Incompatibility does not depend upon the physical inability of one person to discharge the duties of both offices. The test is the character and relation of the offices; that is, whether the functions of the two are inherently inconsistent and repugnant. State v. Goff, 15 R. I. 505, 9 Atl. 226, 2 Am. St. 921; People v. Green, 5 Daly (N. Y.) 254, s. c. 58 N. Y. 295, 296; Mechem, Public Officers, § 422, note 2. "At common law the only limit to the number of offices one person might hold was that they should be compatible and consistent. The incompatibility does not consist in a physical inability of one person to discharge the duties of the two offices, but there must be some inconsistency in the functions of the two; some conflict in the duties required of the officers, as where one has some supervision of the other, is required to deal with, control, or assist him." State v. Bus, 135 Mo. 325, 338, 36 S. W. 636, 33 L. R. A. 616; Attorney General v. Oakman, 126 Mich. 717, 86 N. W. 151, 86 Am. St. 574.

3. The statute (R. L. 1905, § 2667) provides that: "Every office shall become vacant on the happening of either of the following events, before the expiration of the term of such office: * * * (4) His ceasing to be an inhabitant of the * * * county * * * for which he was elected."

The question is whether the respondent ceased to be an inhabitant of Le Sueur county, and a careful consideration of the evidence returned satisfies us that he retained his residence in Le Sueur and that the office was therefore not vacated. Hays, at the time of his election and for some years prior thereto, lived upon a farm near Le Sueur Center. He had been married, but his wife had died, and his mother was keeping house for him. He owned the stock and farming utensils on the farm, and the furniture in the house. It was his home, the place where he lived and maintained a family. Any group constituting a distinct domestic body is a family. Carmichael v. Northwestern, 51 Mich. 494, 16 N. W. 871.

With reference to the residence of voters the statute (R. L. 1905,

105 M.—26

§ 235 [7, 9]) says that: "If a man has his family living in one place and he does business in another, the former shall be considered his residence; but when a man has taken up his abode at any place with the intention of remaining there, and his family refuses to reside with him, then such place shall be considered his residence. * * * The mere intention to acquire a new residence, without the fact of removal, shall avail nothing; neither shall the fact of removal without intention."

On January 3, 1908, the respondent agreed to take charge of the schools of Mountain Lake and superintend them during the balance of the school year. On January 6 thereafter he did, in fact, take charge of the schools of that place and superintended the same until and including February 4. No definite contract was made with him by the school authorities at Mountain Lake, and the evidence shows very conclusively that Hays went there with the understanding that he should give the work a trial, and that if, after the authorities became better acquainted with him and his work, they gave him a contract to teach the schools for the following year, he would then resign his position as superintendent of schools of Le Sueur county and remove to Mountain Lake. But this intention never was carried into effect. The contract for the succeeding year was no made, and the question of his right to keep both positions having been raised, he left Mountain Lake and returned to Le Sueur. During the time he was absent he performed the duties of county superintendent, attended to the correspondence, and provided for holding teachers' examinations. During his absence the office work and correspondence was looked after by Mr. Norby, who was employed by Hays for that purpose.

Something is attempted to be made out of the fact that Hays carried certain personal effects with him to Mountain Lake. It appears that at first he merely took a valise with books and clothing, that after reaching there he found the quarters at his boarding place uncomfortable, and that his mother sent him a trunk which contained a quilt and some other such small articles. It is clear to us that the respondent did not go to Mountain Lake with the intention of at the time abandoning his home in Le Sueur county, and the absence of an intention to abandon a residence is equivalent to an intention to retain

the existing one. 1 Wharton, Conf. Laws, §§ 56, 61; Ross v. Ross, 103 Mass. 575. See Bechtel v. Bechtel, 101 Minn. 511, 515, 112 N. W. 883, 12 L. R. A. (N. S.) 1100. At most, he went with the intention of giving the work a trial, and, if it proved satisfactory and a contract of employment was made for the following year, he would then change his residence.

The writ is therefore discharged.

JAGGARD, J. I dissent.