## AMANDA E. LOHSTRETER v. FEDERAL LIFE INSURANCE COMPANY.[1]

January 9, 1931.

No. 28,246.

Affirmed.

*Doherty, Rumble, Bunn & Butler,* for appellant.

*George T. Simpson,* for respondent.

[1]Reported in 234 N. W. 299.

HOLT, J.

Defendant appeals from the judgment rendered in an action to recover on its accident life insurance policy issued to Leonard Elnes wherein plaintiff was beneficiary. By the terms of the policy defendant agreed to pay the beneficiary $1,000 in the event of accidental death of the insured "by drowning while at a bathing beach where a life guard is regularly stationed."

The insured, Elnes, a 16-year old lad, the brother of plaintiff, was accidentally drowned shortly before noon July 22, 1929, in Long Lake, Hennepin county. Three sons of plaintiff, one about the same age as Elnes, and two younger, were with him at the time. One Stewart owned an 80-acre farm bordering the lake, with a boathouse adjacent to a bathing beach. He also had 14 rowboats at the beach, all of which, save one, he hired out for boating and fishing. He also rented bathing suits and sold bait. Besides his home he had a summer cottage which he rented to guests. Tourists and neighbors would resort to this bathing beach during the summer season. It is plain that it was not in the same class as the public salt water bathing beaches nor in that of the public bathing beaches maintained by municipalities like Minneapolis or St. Paul.

At the time in question the four boys had been swimming and playing in and out of the water for about an hour. The evidence does not show that others were bathing there this forenoon. The two older boys were making use of a diving raft anchored about 125 feet from shore in water about five or six feet deep. Stewart had been around the beach and concluded from the action of the boys (Elnes and the two younger boys running up to where they had parked the automobile in which they came to the beach) that they were going home, started for his house, but when about 50 feet from the boat-house was stopped by cries for help. He returned and jumped into a rowboat and, aided by the oldest of plaintiff's sons, tried in vain to find Elnes where he was seen to disappear. In attempting to swim to the raft Elnes went down some 25 feet from it. When finally the body was recovered life had fled.

Defendant's motion for judgment notwithstanding or a new trial was denied before the entry of the judgment. There are two mat-

ters presented by the appeal, one relating to the failure to give two requested instructions, and one to the sufficiency of the evidence to support the verdict. The one instruction was for a directed verdict, and the other was that Mr. Stewart was not a life guard regularly stationed at a bathing beach within the language of the policy. If defendant was entitled to either of these instructions, it must be conceded that the verdict is without support. So the sole proposition for determination is whether under the evidence Stewart was a life guard regularly stationed at the bathing place where Elnes drowned. The evidence is conclusive that the cause of death was accidental drowning. But under the wording of the policy the burden was on plaintiff to prove that the insured came to his death by drowning while at a bathing beach where a life guard was regularly stationed. McAlpine v. Fidelity & Casualty Co. 134 Minn. 192, 158 N. W. 967; Farrar v. Locomotive M. L. & A. Ins. Assn. 143 Minn. 468, 173 N. W. 705. As we understand defendant, no contention is made that the place where Elnes drowned is not "a bathing beach" within the meaning of the policy. But the claim is that the evidence is insufficient to prove either that Stewart was a life guard or that he was regularly stationed at the beach. It was necessary for a recovery to prove both.

At defendant's request the court instructed the jury that "a life guard, as the term is used in this policy of insurance, is an expert swimmer, employed or stationed at a public bathing beach or resort, to save those in danger of drowning." This is the lexicographer's definition of the word life guard. It is perhaps doubtful whether it is applicable in its strictness to the policy if in the common and prevailing understanding it has a different meaning. Williamsburgh City F. Ins. Co. v. Willard, 164 F. 404, 21 L.R.A.(N.S.) 103. Imperial F. Ins. Co. v. Coos County, 151 U. S. 452, 463, 14 S. Ct. 379, 38 L. ed. 231, holds that the language in insurance contracts is to be given the meaning it ordinarily and usually conveys to the popular mind. But taking the instruction as given, the qualification and duties of a life guard cannot in the nature of things be the same at all bathing beaches. The policy does not confine coverage to

public bathing beaches like those established at noted salt water resorts or at the bathing beaches established and maintained by our larger municipalities. What may be required in the way of swimming ability as popularly understood in order to be an expert swimmer to fill the position at ordinary bathing beaches or resorts such as the one in question and a bathing beach where breakers, tides, and undertows are encountered may not be the same. The policy does not specify or define. We think it was for the jury and not the court to say whether Stewart was a life guard within the meaning of the policy. He testified that he could swim and dive. True, he admitted he could not "tread water" and had not tried out how much farther than 100 yards he could swim. He was not cross-examined as to speed in swimming or ability to stay under in diving. Nor did the defense offer any testimony at all regarding the standard or test of an expert swimmer. And as to precautions taken for the rescue of bathers in danger of drowning, Stewart testified that one boat with oars in was always kept in readiness for such purpose at the bathing place. If one in distress is some distance from the shore the rower may be able to come to the rescue quicker than the swimmer.

Defendant also contends that Stewart was not regularly stationed at the beach. He testified he always remained there when bathers were present. That when so attending he also sold bait or rented out boats and bathing suits, work which could be done right at the beach and without relaxing the vigilance required of a life guard, does not as a matter of law lead to the conclusion that Stewart was not "regularly stationed" at the beach. That for the once he made a mistake and left on an errand before all the bathers had come out should not bar a recovery. If when Elnes came there to swim the life guard was on duty stationed there, the fact that before Elnes came out Stewart left, for whatever cause so long as the leaving was not with Elnes' consent or bidding, the coverage clause here involved should be held to remain in effect.

Construing the terms of this policy where they are not plain and definite more favorably to the insured than the insurer, whose language it is, we think it was for the jury to say whether Stewart was

stationed at the beach regularly, considering that there is nothing in the policy describing the sort of beach covered and that this was a small beach where bathing was more or less intermittent. This is not deemed a departure from the rule that the plain and unambiguous language of a policy controls as announced in cases like Bader v. New Amsterdam Cas. Co. 102 Minn. 186, 112 N. W. 1065, 120 A. S. R. 613, or Tupper v. Massachusetts B. & I. Co. 156 Minn. 65, 68, 194 N. W. 99, 100, where it is said:

"The general rule is that the language of an insurance policy is to be given the usual and ordinary meaning it conveys to the popular mind."

The judgment is affirmed.