143 So. 839

## HOME INS. CO. v. PETTIT.
### 8 Div. 420.

Supreme Court of Alabama.
June 16, 1932.

Rehearing Denied Oct. 27, 1932.

Eyster & Eyster, of Decatur, for appellant.

A. J. Harris and Julian Harris, both of Decatur, for appellee.

KNIGHT, J.

The appellee, plaintiff in the court below, brought suit in the circuit court, and recov-

ered judgment against the Home Insurance Company on a contract of insurance, whereby the company had insured the plaintiff against loss or damage caused by theft, robbery, or pilferage of a certain automobile owned by the plaintiff.

From the judgment in favor of the plaintiff, the defendant company prosecuted its appeal to the Court of Appeals, which resulted in an affirmance, by that court, of the judgment of the circuit court. Petitioner, dissatisfied with the conclusion reached in the case by the Court of Appeals, has now applied to this court for writ of certiorari to review and revise the decision of the Court of Appeals. From the opinion now before this court, the Court of Appeals found, and so holds, that there is no dispute but that appellee owned the automobile, which was stolen; that appellant had duly issued its policy of insurance covering any loss that appellee might have sustained by reason of the theft of the car, provided such loss was not excepted by a clause inserted in the policy; and "that all preliminary prerequisites to maintaining the suit had been complied with by the plaintiff prior to the institution of the suit."

In the circuit court, the jury were instructed to find the issue in favor of the plaintiff, if they believed all the evidence, and the court refused a like instruction in favor of the defendant.

The contract of insurance protected the insured (plaintiff) against theft, robbery, and pilferage, "excepting by any person or persons in the assured's household or in the assured's service or employment, whether the theft, robbery or pilferage occurs during the hourse of such service or employment or not."

With reference to the evidence offered on the trial, the opinion of the Court of Appeals states: "The undisputed testimony showed that appellee (assured) was in business for himself; that he spent a part of his time— 'over week ends'—with his father, at his father's home; that said father owned the said home, residing there with his family; that appellee was a salesman, and that that occupation required his traveling around; that the automobile, at the time it was stolen, was kept by appellee, locked, etc., in a garage about 75 yards from where appellee was staying, at the home of his father; that upon the occasion of the theft of the car it was stolen by an uncle of appellee, who was temporarily in the home of appellee's father, as a guest of the family, sleeping, at nights, in the room of appellee; that appellee, in addition to his business as a salesman, was, at the time in question, engaged in the business of farming, there at his father's home, in association with his father; that appellee did not invite said uncle into the said home, and, for aught appearing, had no authority to ask him to leave."

The Court of Appeals then propounds the following question: "Was the uncle, referred to above, a person 'in the assured's household,' in the sense contemplated by the quoted portion of the policy?" This question, the Court of Appeals, in its opinion now before us, has answered in the negative. This conclusion we now are asked to review and revise.

It is the duty of this court, in exercising its supervisory jurisdiction, to review the conclusion of the Court of Appeals for the purpose of determining if that court has misapplied the law to the facts stated in its opinion, and which superinduced its ruling. Rochester-Hall Drug Co. v. Bowden, 218 Ala. 242, 118 So. 674; Lancaster v. State, 214 Ala. 2, 106 So. 617; Fairbanks-Morse & Co. v. Dees et al., 220 Ala. 41, 126 So. 624.

This court, in a number of cases heretofore decided, has held that, where the provisions of a policy of indemnity are reasonably susceptible of two constructions, consistent with the object of the obligation, one favorable to the assured, and the other favorable to the insurer, that will be adopted which is favorable to the assured. Illinois Auto. Ins. Exch. v. So. Motor Sales Co., 207 Ala. 265, 92 So. 429, 24 A. L. R. 734; Illinois Surety Co. v. Donaldson, 202 Ala. 183, 79 So. 667.

The case now under consideration is one of first impression in this court, and we have been unable to find any authoritative expression of this court directly in point. Nor have the labors of counsel for the respective parties brought to our view any authority in which a similar case has received the attention of other courts. The nearest case in point is that of Rydstrom v. Queen Ins. Co., 137 Md. 349, 112 A. 586, 14 A. L. R. 212, to which we shall have occasion presently to advert.

The word "household" has a well-known legal meaning. In 30 C. J. p. 474, the author speaking of the word "household" as a noun, gives this definition: "The definition of the Latin word 'familia,' a family living together; a number of persons dwelling under the same roof and composing a family; and by extension, all who are under one domestic head; persons who dwell together as a family; the place where one holds house, his home."

The word "family" and "household" are often used interchangeably. Pearre, Ex'r, v. Smith, 110 Md. 531, 73 A. 141. Webster defines the word "family" to be "a collective body of persons who live in one house and under one manager," and that meaning has been approved in many cases cited in the footnote found on page 866 of volume 12, Am. & Eng. Encycl. Bouvier's Law Dictionary, vol. 2, p. 1186, says that in common parlance the family "consists of those who live under the same roof with the pater-familias," and

also cites different cases as authority for the definition of the word family taken from Webster. In the case of People v. Tait, 261 Ill. 197, 103 N. E. 750, the Illinois Supreme Court held that the word "household" is equivalent to the word "family."

In 19 Cyc. p. 450, we find a definition of the word "family," with citation of many authorities in the notes thereunder. It is thus said: "While the term may be said to have a well defined, broad, and comprehensive meaning in general, it is one of great flexibility and is capable of many different meanings according to the connection in which it is used; thus it may mean 'children,' 'wife and children,' 'blood relations,' or the 'members of a domestic circle,' according to the connection; it may be of narrow or broad meaning as the intention of the parties using the word, or as the intention of the law using it, may be made to appear; but unless the context manifests a different intention the word 'family' is usually construed in its primary sense. In its ordinary and primary sense the term signifies the collective body of persons living in one house, or under one head or manager, or one domestic government; the relations between such persons necessarily being of a permanent or domestic character, not that of persons abiding temporarily together as strangers; a household; those who live under the same roof with the pater-familias, who forms his fireside; in its restrictive use, in this sense, the terms would include only parents and their children, but the term, as commonly understood, is not so limited; thus it may include grandchildren, and all the persons of the same blood living together in the household; so, it may include sons-in-law and daughters-in-law; in fact it may include all members of the household living under the authority of the head thereof, as the servants employed in the house; and sometimes it may include persons who are merely lodgers or boarders in the house."

Under our Code of 1867 (section 2376) the wife's estate was declared liable for the support of the family. And in the case of Pippin and Wife v. Jones & Co., 52 Ala. 161, in an opinion by Chief Justice Brickell, this court held that servants necessarily employed and residing in the family were a part of the "'household,' within the meaning of the statute."

It will be noticed that in the excepting clause the preposition "in" is employed—"excepting by any person or persons in the assured's household," etc. The word "in" should, in construing this provision of the contract, be given the usual meaning and understanding employed by persons in the ordinary walks of life, nothing appearing therein to show that it was used in some other or technical sense. To properly construe any writing, constituting the memorial of a contract between parties, the first important canon of construction is to ascertain, if possible, the real intention of the contracting parties. To arrive at that intention, the circumstances under which the contract was made, the object and purposes the parties had in mind, and words employed to express their meaning, should all be given consideration. Words employed in the contract should be given their plain, ordinary, everyday meaning, unless it appears from the instrument itself, or from something in the circumstances of the case, to indicate to the judicial mind the words were used in some technical sense.

The word "in," in general, denotes presence in place, time, or state; not out. The writing in which the term appears must always be considered and looked to for the proper determination and ascertainment of the sense in which the word is used. Worchester Dict.; Mayor, etc., of City of New York v. Second Ave. R. Co., 31 Hun (N. Y.) 241, 245. With reference to place or situation, "in" means inside of; surrounded by; within; within the bounds or limits of. 31 Corpus Juris, p. 354, and authorities cited in notes.

In Rydstrom v. Queen Ins. Co., 137 Md. 349, 112 A. 586, 14 A. L. R. 212, the Supreme Court of Maryland held in a case, where the exception was identical with the language of the exception in the instant case, that a nephew paying a visit of two or three days to his uncle was a person in the latter's household, within the meaning of a theft policy, excepting from the insurer's liability theft by a person "in the assured's household."

This holding of the Maryland Supreme Court seems to be sound, when considered in connection with the policy. "This policy, as the language clearly indicates and means, was to insure against theft, robbery, etc., 'except by a person or persons in the assured's household,' and if the theft was committed by a person or persons in the assured's household, the company would not be liable. The object and purpose of an exception like the one we are here dealing with in this policy was to guard the company against liability for such thefts as we have in this case, and to prevent fraud and collusion by and between the assured and persons in a household or in the assured's services or employment." Rydstrom v. Queen Ins. Co. of America, supra.

From the facts stated in the opinion of the Court of Appeals, it appears that the father of the assured owned the house, but that the assured was a traveling salesman, and that his occupation required his traveling around, and that he spent part of his time—"over week ends"—with his father, at his father's home. And it further appears "that the automobile, at the time it was stolen was kept by appellee locked, etc., in a garage about

seventy-five yards from where appellee was staying, at the home of his father, and that upon the occasion of the theft of the car it was stolen by an uncle of appellee, who was temporarily in the home of appellee's father, as a guest of the family, sleeping at nights in a room with appellee; that appellee, in addition to his business as a salesman, was, at the time in question, engaged in the business of farming there at his father's home, in association with his father; that appellee did not invite said uncle into the said home." The fact remains, however, and stands out in the case, that at the time the car was stolen the thief was occupying a room in the house with the assured. Whether by invitation or not, the thief, while staying in the household, shared appellee's bedroom. The object and purpose of the exception in the contract was to protect the insurer against just such a liability as is attempted to be fastened against it in this case. The thief was in the assured's household—not that assured owned the home—but, to all intents and purposes of the contract of insurance, it was the assured's household.

The conclusion reached by the Court of Appeals is not in consonance with these views, and it results that the judgment of the Court of Appeals must be reversed.

Writ awarded. Reversed and remanded.

All the Justices concur.