## TONY TOMLYANOVICH v. GEORGE TOMLYANOVICH. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, GARNISHEE.[1]

May 1, 1953.

Nos. 35,969, 35,973.

*Gannon & Morton,* for Tony Tomlyanovich.
*Hunt, Palmer, Hood & Crassweller,* for garnishee.

KNUTSON, JUSTICE.

This action was commenced by plaintiff to recover damages for personal injuries alleged to have been sustained when an automo-

[1]Reported in 58 N. W. (2d) 855.

bile owned and driven by defendant, in which plaintiff was riding as a passenger, left the highway. The defense of the action was undertaken by State Farm Mutual Automobile Insurance Company, insurer of defendant, under a reservation of rights, it being the contention of the insurer that it was not liable under a family exclusionary clause contained in the policy which will hereinafter be discussed. After the trial had proceeded a short time, the insurer, claiming that defendant was not co-operating with it as the policy required, denied liability on that ground also but offered to proceed with the trial if defendant so desired, reserving its rights to deny liability if it proceeded with the defense, or to step out and permit defendant to procure counsel of his own. At defendant's request, counsel for the insurer continued with the defense, and the case proceeded to completion. Plaintiff recovered a verdict, and thereafter judgment was entered in his favor for $7,105.12. The insurer having refused to pay, garnishment proceedings were instituted against it. The trial court found that the insurer was not liable under the family exclusionary clause and found against the insurer on the issue of co-operation. The garnishee and plaintiff each moved for amended findings or a new trial, and, all motions having been denied, both parties have separately appealed. The two appeals have been considered together here.

## ON PLAINTIFF'S APPEAL

The policy of insurance involved contains the following coverage and exclusion:

"I. Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

\* \* \* \* \*

"EXCLUSIONS

"This policy does not apply:

\* \* \* \* \*

"(e) Under coverage A, to any obligation for which the insured or any company as his insurer may be held liable under any workmen's compensation law; or to the insured *or any member of the family of the insured* residing in the same household as the insured;" (Italics supplied.)

The facts pertinent to a determination of the applicability of the exclusionary clause are not in dispute. Plaintiff and defendant are brothers. At the time of the accident out of which the litigation arose defendant was 29 years of age and plaintiff was 27 years of age. Both were unmarried and resided in the family home at Leetonia Location, near Hibbing. The home and all furnishings were owned by the father of plaintiff and defendant. Also living at home were two other unmarried brothers, aged 20 and 25, and the father and mother, each 59 years of age. The mother prepared the meals, and all members of the family ate at the same table when they were home on time. The mother did the housework and laundry for all members of the family. They all received their mail in a common mailbox. At the time of the accident defendant was employed by the Great Northern Railway Company as a brakeman. Plaintiff was then unemployed. While there was no set arrangement for payment of board and room, both plaintiff and defendant did pay their mother and father. Defendant paid $60 to $70 per month during the summer months and plaintiff paid $50 per month for board, room, and laundry. Plaintiff and defendant each had a separate bedroom, but otherwise had free use of the house.

■ We are committed to the rule that, inasmuch as the language of an insurance policy is that of the insurer, any reasonable doubt as to its meaning must be resolved favorably to the insured. 3 Dunnell, Dig. & Supp. § 4659; Cement, Sand & Gravel Co. v. Agricultural Ins. Co. 225 Minn. 211, 30 N. W. (2d) 341.

Words used in contracts of insurance, however, like any other contract, must be given the meaning they ordinarily convey to the popular mind.

In Lohstreter v. Federal L. Ins. Co. 182 Minn. 298, 300, 234 N. W. 299, in construing the word "lifeguard" as used in an insurance policy we said:

"* * * the court instructed the jury that 'a life guard, as the term is used in this policy of insurance, is an expert swimmer, employed or stationed at a public bathing beach or resort, to save those in danger of drowning.' This is the lexicographer's definition of the word life guard. It is perhaps doubtful whether it is applicable in its strictness to the policy if in the common and prevailing understanding it has a different meaning. Williamsburgh City F. Ins. Co. v. Willard, 164 F. 404, 21 L.R.A.(N.S.) 103. Imperial F. Ins. Co. v. Coos County, 151 U. S. 452, 463, 14 S. Ct. 379, 38 L. ed. 231, holds that the language in insurance contracts is to be given the meaning it ordinarily and usually conveys to the popular mind."

In Elton v. Northwestern Nat. L. Ins. Co. 192 Minn. 116, 121, 255 N. W. 857, 860, we quote with approval the following from Bergholm v. Peoria L. Ins. Co. 284 U. S. 489, 492, 52 S. Ct. 230, 231, 76 L. ed. 416, 419:

"Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary and popular sense."

See, also, Konschak v. Equitable L. Assur. Society, 186 Minn. 423, 243 N. W. 691; Gershcow v. Homeland Ins. Co. 217 Minn. 568, 15 N. W. (2d) 88; 3 Dunnell, Supp. § 4659, note 97a.

Similarly, a policy of insurance, like any other contract, is to be construed so as to give effect to the intention of the parties as it appears from the entire instrument. Dawes v. Brotherhood of Locomotive F. & E. 216 Minn. 411, 13 N. W. (2d) 28.

Having in mind these rules of construction, the question before us is: What do the words "any member of the family of the insured

residing in the same household as the insured" mean as used in this policy of insurance?

Many legal definitions of the word "family" can be found, the meaning depending to a large extent on the field of law in which the word is used. See, for instance, Black, Law Dictionary (4 ed.) p. 727; Webster's New International Dictionary (2 ed.) (1947) p. 916; Funk & Wagnalls New Standard Dictionary (1945) p. 894; The Century Dictionary and Cyclopedia; 35 C. J. S., Family, pp. 737 to 740; 16 Wd. & Phr. (Perm. ed.) p. 186, *et seq.*

It would be useless to attempt to base decision here on any definition of the word "family" alone without reference to the purpose intended to be accomplished by the exclusionary clause in which the word is used.

Most authorities hold that "family" as used in indemnity insurance contracts is synonymous with "household," except possibly that it is limited to those members of a group having some blood relationship.

In Collins v. Northwest Cas. Co. 180 Wash. 347, 352, 39 P. (2d) 986, 989, 97 A. L. R. 1235, the Washington court said:

"* * * The word 'household' is defined by the dictionaries and the courts as the members of a house collectively; a domestic establishment, including servants and attendants. *The word has been considered as synonymous with the word 'family.'* The word 'family' is defined by Webster to be: 'The body of persons who live in one house, and under one head or manager.' While in a restricted sense the word 'family' may be used interchangeably with 'household,' there is a difference in the ideas suggested by the two words. The word 'family' conveys the *notion of some relationship*—blood or otherwise. In its most common use, the word implies father, mother and children—immediate blood relatives; but the word is also used to designate many other and extended relationships." (Italics supplied.)

In Home Ins. Co. v. Pettit, 225 Ala. 487, 488, 143 So. 839, 840, the Alabama court said:

"The word 'family' and 'household' are often used interchangeably. * * * Webster defines the word 'family' to be 'a collective body of persons who live in one house and under one manager,' and that meaning has been approved in many cases cited in the footnote found on page 866 of volume 12, Am. & Eng. Encycl. Bouvier's Law Dictionary, vol. 2, p. 1186, says that in common parlance the family 'consists of those who live under the same roof with the pater-familias,' and also cites different cases as authority for the definition of the word family taken from Webster. In the case of People v. Tait, 261 Ill. 197, 103 N. E. 750, the Illinois Supreme Court held that the word 'household' is equivalent to the word 'family.'"

In Rydstrom v. Queen Ins. Co. 137 Md. 349, 353, 112 A. 586, 587, 14 A. L. R. 212, cited by us with approval in Engebretson v. Austvold, 199 Minn. 399, 271 N. W. 809, infra, in holding that a nephew was a member of the insured's household the Maryland court said:

"The general definition of 'household,' it will be seen, when used as a qualifying word, is pertaining or belonging to the house or family."

In Ocean Acc. & Guart. Co. Ltd. v. Schmidt (6 Cir.) 46 F. (2d) 269, 270, the court said:

"In Arthur v. Morgan, 112 U. S. 495, 499, 5 S. Ct. 241, 243, 28 L. Ed. 825, the court said: 'Persons who dwell together as a family constitute a "household."' * * * *We do not doubt that a son living under the parental roof is a member of the household even though he has reached his majority and supports himself, * * *.*" (Italics supplied.)

In State Farm Mut. Auto. Ins. Co. v. James (4 Cir.) 80 F. (2d) 802, 803, the court said:

"* * * The term 'household' is customarily used to mean a number of persons who dwell together as a family."

In Andrews v. Commercial Cas. Ins. Co. 128 Neb. 496, 259 N. W. 653, defendant had issued a policy of indemnity insurance covering

liability for damages on account of personal injury to one Louise Marvin. The policy extended to damages resulting while the automobile was being driven with the permission of an adult member of the "assured's household." Plaintiff was injured in a collision between an automobile in which he was riding and assured's automobile, which was being driven by her brother Fred. The question presented was whether Fred was a member of assured's household. At the time of the accident, the named insured, her brother Fred, and their mother were living together. All were adults, and all contributed to the expenses of the home. The court held that Fred was a member of assured's household and could give himself permission to drive the car and, hence, that he was within the coverage of the policy. With respect to the definition of "household," the court said (128 Neb. 500, 259 N. W. 655):

"The word 'household' was used in the policy in its ordinary sense as understood in common parlance. As defined by Webster it means, in the insurance contract, 'Those who dwell under the same roof and compose a family.' "

Plaintiff contends that the words "family of the insured" includes only those members of the group of which the insured is the head. In Farm Bureau Mut. Auto. Ins. Co. v. Violano (2 Cir.) 123 F. (2d) 692, 695, the same argument was made respecting the construction of the words "any member of his [the insured's] household." In rejecting this argument, the court said:

"* * * Farm Bureau argues that 'his household' must be taken to mean 'a household of which he is the head.' We cannot accept that construction. In normal speech, one's household is the familial or residential group with which one lives; *a wife or child, as well as the pater familias, has a household.* The purpose of excepting cars owned by members of J. Alan's household was to reduce insurer's risk; words having a similar purpose were given their ordinary meaning in Cartier v. Cartier, 84 N. H. 526, 153 A. 6 and in Home Insurance Co. v. Pettit, 225 Ala. 487, 143 So. 839. This interpretation is clinched by the fact that the coverage of Auto 1-S was

available to J. Alan only if he resided in his father's household." (Italics supplied.)

The facts in Cartier v. Lumbermen's Mut. Cas. Co. 84 N. H. 526, 153 A. 6, are nearly identical with those in the case before us, except that the policy excluded "Accidents to members of the assured's household, including domestic or household servants." In that case, as here, plaintiff, his brother who was the insured, their father, mother, and sister all lived together in a house owned by the mother, who ran it and to whom *the brothers* and father *each paid board.* It was argued that the excepting clause in the policy did not exclude a brother of the insured but only a household of which the insured was the head. In rejecting this contention, the New Hampshire court said (84 N. H. 527, 153 A. 6):

"A household is a group of persons living together. It is usually said that they must be under a head called the householder. Of the household here apparently the mother was the head. The insured and his brother being members of it, *it was their household or the household of each of them.* * * * The clause would not seem to be doubtful in a disclosed purpose to make membership in a household on the part of the insured enough to subject him to it. It is the natural and ordinary meaning of the words used. As one reads the clause, the policy gives the insured no protection for injury to members of his household, and the household includes any servants in it.

\* \* \* \* \*

"* * * A household and a family are substantially synonymous terms, and family ties bind most closely. And *it can be of no importance in this bearing what position the insured has in his household.* The insured here would be as much disposed to favor his mother, the household head, if he injured her, as she would to favor him if she were the insured. It is an attitude of common mutuality arising out of the general status and not one dependent upon the particular relationship of one member to another within the status. In sense and reason the insurer had no occasion in issuing a policy to one belonging to a household to make a distinction according

as he was or was not its head. Such a difference would be wholly of caprice. Recognizing the increased hazard in cases of family accidents, the insurer purposed to avoid it generally, and the excepting clause makes the purpose apparent." (Italics supplied.)

In discussing the obvious purpose behind the excepting clause which limited the company's liability, the New Hampshire court further said (84 N. H. 528, 153 A. 7):

"In considering the purpose of the excepting clause of the policy it is clear enough that it was meant to avoid the insurer's liability to indemnify for injuries to members of the insured's household, *whether or not he was its head.* The natural tendency of one insured to strengthen or enlarge the evidence of liability to members of his household for accidents insured against increases the hazard of liability under the policy in such cases over that for accidents to others. Without actual dishonesty the disposition to favor those close to one reflects itself in opinions and judgments, and one insured is more likely to concede by admission or non-resistance blame for hurting a member of his household than for doing harm to others." (Italics supplied.)

Plaintiff here argues that the New Hampshire courts do not construe insurance contracts against the insurer as we do. That may well be true, but the court based its decision in the Cartier case on its conclusion that their interpretation of the exclusionary clause (84 N. H. 527, 153 A. 7) "is the natural and ordinary meaning of the words used." To that extent they follow the same rules that we do.

Following the Cartier case, the federal court in State Farm Mut. Auto. Ins. Co. v. James (4 Cir.) 80 F. (2d) 802, 803, said:

"If in accord with the general rule of interpretation, the meaning of the word 'household' in the policy under consideration is determined in the light of the situation in which it was used, there can be no doubt that it was intended to embrace such a person as the plaintiff in this case. Obviously the exception was intended to restrict the company's liability, and the specific purpose was to safe-

guard the company against the natural and inevitable partiality of the assured to an injured person if he should happen to be a member of the same family circle."

To like effect, see Farm Bureau Mut. Auto. Ins. Co. v. Violano (2 Cir.) 123 F. (2d) 692, *supra,* the court there also following the Cartier case.

Our own cases are in accord. In Engebretson v. Austvold, 199 Minn. 399, 271 N. W. 809, defendant was a daughter of plaintiff. In 1931 she married and moved to Montana. Her husband died in 1933, whereupon defendant returned to Minnesota and was living in her mother's home when the accident occurred out of which the action arose. The insurance policy issued to defendant by the garnishee excluded liability for injury to "persons in the same household as the assured, or those in the service or employment of the assured." We held that defendant was a member of the same household as her mother. With respect to the distinction between the words "household" and "family," we said (199 Minn. 402, 271 N. W. 810):

"There is not much disagreement in the definitions of 'household,' whether they emanate from judges or lexicographers. The word is synonymous with 'family' but broader, in that it includes servants or attendants, 'all who are under one domestic head; persons who dwell together as a family.'"

We cited with approval the definition found in Rydstrom v. Queen Ins. Co. 137 Md. 349, 112 A. 586, 14 A. L. R. 212, *supra.*

In Anderson v. Royal League, 130 Minn. 416, 153 N. W. 853, L. R. A. 1916B, 901, we held that a stepdaughter was a member of the family of the assured under a fraternal insurance certificate. We cited with approval Norwegian Old People's Home Society v. Wilson, 176 Ill. 94, 52 N. E. 41, where the Illinois court held that a brother residing with a member, as well as a daughter not so residing, was of the immediate family of the member.

While State ex rel. Young v. Hays, 105 Minn. 399, 401, 117 N. W. 615, 616, did not involve an insurance contract, we there said:

"* * * Any group constituting a distinct domestic body is a family."

Had the policy in the case before us excluded liability for injury to "persons in the same family as the assured," there could be no doubt that a brother of the insured would be a member of the class excluded under Engebretson v. Austvold, *supra*, as well as the other cases cited above. Plaintiff virtually concedes that to be true but argues that the words "any member of the family of the insured" are used in the possessive sense and should be construed to mean only the spouse and issue of the insured. No case involving an insurance policy of the kind here involved has been cited in support of such a narrow construction, nor do we believe that any can be found. Cases construing similar provisions where the word "household" instead of "family" is used are unanimous in rejecting this contention as shown above. If the policy had excluded a member of the "household" of the insured instead of a member of the "family" of the insured, it is likewise difficult to see how anyone could contend that plaintiff was not a member of defendant's household. If, then, as we said in the Engebretson case, "household" and "family" are synonymous except that "family" does not include domestics and servants, how can it be successfully contended that plaintiff is not a member of the family of defendant?

If the narrow definition urged by plaintiff were applied, it would mean that if a father were the insured his son would be within the exclusionary clause but if a son were the insured an injured mother or father would not be within the exclusion. The same hazard exists that the son, being the insured, would be partial to his father as that the father, being the insured, would be partial to his son. Cartier v. Lumbermen's Mut. Cas. Co. 84 N. H. 526, 153 A. 6, *supra*, is probably the leading case on this subject in this country. It has been followed by many other cases. While the language construed in that case is "members of the assured's household," there can be no distinction between "assured's household" and "household of the insured." If, as we said in the Engebretson case, the words "household" and "family" are synonymous except that house-

hold includes domestics and servants, it must follow that under the Cartier case a brother of the insured is a member of his family within the meaning of this exclusionary clause. To apply the narrow and strained meaning to the language used here that plaintiff suggests would virtually wipe out the exclusion in this state. The insured could not become liable on an indemnity contract for injuries to a spouse or an unemancipated minor for the reason that no action could be brought in this state by either spouse or such minor. That would mean that only emancipated children would be excluded and, under the terms of this policy, only such children as were living in the same household at the time of the accident. It would mean that no single person could be considered to have a family, which seems to us to be contrary to the ordinary meaning of the words used and which is surely contrary to the authorities. We see no necessity for giving this language such strained and restricted meaning in view of the obvious purpose of the exclusion.

In Bair v. Robinson, 108 Pa. 247, 249, 56 Am. R. 198, 199, the Pennsylvania court said:

"* * * that all persons who dwell together under a common head as a household are embraced by the word 'family' is so well and generally understood that we would be doing violence to the common understanding were we to limit the definition of that term to parents and children only."

Plaintiff cites and relies upon Restatement, Property, § 293, which deals with future interests in real property. The citation is of no help here. The only cases cited by plaintiff are Franklin F. Ins. Co. v. Shadid (Tex. Com. App.) 68 S. W. (2d) 1030; Howard v. Marshall, 48 Tex. 471; and Phillips v. Ferguson, 85 Va. 509, 8 S. E. 241. None of these cases deal with a policy of insurance such as we have before us now.

Franklin F. Ins. Co. v. Shadid, *supra*, was a case involving a policy of insurance covering loss by fire to the household effects, including wearing apparel, of the insured "and family." The insured was unmarried and lived in the house, the title to which was

in his own name. Also living in the house were two unmarried sisters of the insured and insured's brother and his wife and their minor children. All members of the household, except the minor children, operated a store together in the name of the insured. Part of the apparel lost in the fire belonged to insured's brother and his wife. The policy also provided that it should be void if the interest of the insured be other than unconditional and sole ownership. The Texas court held that the brother and wife were not part of insured's family, following the definition of "family" stated in Howard v. Marshall and Phillips v. Ferguson, *supra*. The court in so holding applied the definition of "family" found in its cases dealing with homestead exemptions.

Howard v. Marshall, *supra,* involved the question of whether servants of a deceased constituted part of his family under the homestead laws of the state. The court came to the conclusion that the decedent involved had no homestead, and what it said concerning the family of decedent is largely dictum.

Phillips v. Ferguson, *supra,* dealt with a will which provided, among other things, that (85 Va. 510, 8 S. E. 241) "If either one of my children above named in my will should marry in T. W. Phillips' family, I only give him or her the sum of three dollars." One of the testator's daughters married a son of the said T. W. Phillips who at that time was living with his father but was of age and doing business on his own. In holding that the son was a member of T. W. Phillips' family, within the meaning of the will, the court said (85 Va. 513, 8 S. E. 243) :

"A condition not to marry a Scotchman, or a Papist, or that the widow of the testator shall not marry again, has been held valid, and no reason is perceived why, ordinarily, a prohibition to marry into a particular family is not equally good, certainly when, as is the case here, the word 'family' is used in its primary and restricted sense. It is not a technical word, and, being of flexible meaning, it must be construed according to the context of the will. In one sense it means the whole household, including servants, and even boarders and lodgers. In another it means all the relations who

descend from a common ancestor. Its primary meaning, however, is 'children,' and so it must be construed in all cases, unless the context shows that it was used in a different sense."

The court in its opinion in the Phillips case quotes with approval the following from Pigg v. Clarke, 3 Ch. D. 672, 674 (85 Va. 514, 8 S. E. 243):

"* * * every word which has more than one meaning has a primary meaning; and if it has a primary meaning, you want a context to find another. What, then, is the primary meaning of 'family'? It is 'children'; * * *."

The above cases illustrate the danger of attempting to apply a definition of the word "family" to a case involving an entirely different situation from the one in the case in which it has been defined without regard to the purpose intended to be accomplished by the sentence or clause in which the word is used. The obvious purpose of the clause here involved is to exempt the insurer from liability to those persons to whom the insured, on account of close family ties, would be apt to be partial in case of injury. No such purpose is involved in any of the cases cited. Nor do the authorities support the statements found in the above cases when applied to insurance contracts such as we now have before us. Even the Texas courts do not follow the narrow definition of "family" stated above in cases involving different situations. In Kiggins v. Henne & Meyer Co. Inc. (Tex. Civ. App.) 199 S. W. 494, the court of civil appeals held that six unmarried brothers and four unmarried sisters and their father living together were a family under the laws of the state pertaining to exemptions of a family in a case involving the attachment of property belonging to the brothers and sisters to satisfy a judgment against the brothers.

Again, in Seley v. Howell, 115 Tex. 583, 285 S. W. 815, the Texas court held that a mother was a member of her afflicted son's family. The court there cites with approval the following meaning of the word "family" found in the early case of Wilson v. Cochran, 31 Tex. 677, 680, 98 Am. D. 553, 555 (115 Tex. 590, 285 S. W. 817):

"* * * It was most certainly used in its generic sense, embracing a household, composed of parents and children, or other relatives, or domestics and servants; in short, every collective body of persons living together within the same curtilage, subsisting in common, directing their attention to a common object, the promotion of their mutual interests and social happiness. These must have been the characteristics of the 'family' contemplated by the framers of the constitution in engrafting this provision upon it. It is, besides, the most popular acceptation of the word, and is more fully in unison with the beneficent conception of the political power of the state, in making so humane and so wise a concession as that of the inviolability of a homestead from all invasion by legal process."

Furthermore, the authorities do not support the statement found in Pigg v. Clarke, 3 Ch. D. 672, *supra,* that the primary meaning of "family" limits the class to children.

In 35 C. J. S., Family, p. 738, the rule is stated thus:

"In its primary sense the term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof, and has been most frequently defined as meaning, substantially, a collection, or the collective body, of persons living in one house, or under one head or manager, * * *. More specifically, the word has been defined as a collective body of persons, consisting of parents or children, *or other relatives,* domestics, or servants, residing together in one house or upon the same premises; a collective body of persons, who form one household, under one head and one domestic government, and who have reciprocal natural or moral duties to support and care for each other; * * *." (Italics supplied.)

Cited in support of the above statement is Lumbermens Mut. Cas. Co. v. Pulsifer (D. C.) 41 F. Supp. 249, 251, where the court said:

"* * * Ordinarily the word 'household' is synonymous with 'family', which Webster says is 'The body of persons who live in

one house and under one head or manager; a household, including parents, children and servants, and, as the case may be, lodgers or boarders.' He defines 'household' as 'Those who dwell under the same roof and compose a family; a domestic establishment; family.' "

Cited with approval in the Lumbermens case is Robbins v. Bangor Ry. & Elec. Co. 100 Me. 496, 505, 62 A. 136, 140, 1 L.R.A.(N.S.) 963, where the court said:

"* * * The word family is also of flexible meaning. The meaning varies as the question arises under homestead laws, or exemption laws, or pauper laws, or under insurance policies or wills, or other conditions. Its primary meaning is a collection of persons who live in one house and under one head or management. Dodge v. Boston & Prov. R. R., 154 Mass. 299. In that sense it has frequently been defined as synonymous with household."

With respect to the proper interpretation of the words used, the court in the Lumbermens case said (41 F. Supp. 251):

"The interpretation and application of the language of the endorsement is facilitated by a consideration of its purpose."

It is obvious that the word is one of great flexibility and has "many different meanings according to the connection in which it is used." 35 C. J. S., Family, p. 737.

Here, the word "family" is used in a clause restricting the liability of an indemnity insurer in an automobile policy. Its obvious purpose is to exempt the insurer from liability to one who would naturally and inevitably be partial to another because of the close filial ties which exist between members of the same family circle living in the same household. The same reasons exist for restricting its liability to those not members of such family circle whether the injured party is the head of the household, a child or spouse of the head, or simply a member of it. Under these circumstances, the words used should be given that meaning which they ordinarily would have in order to effectuate the obvious purpose intended by

the exclusionary clause. The trial court correctly held that plaintiff was within the excluded class.

## ON GARNISHEE'S APPEAL

■ The only issue raised by the garnishee's appeal is whether the trial court's finding that the insured co-operated with the insurer is reasonably sustained by the evidence.

"Whether the insured failed to coöperate with the insurer is a question of fact, and the usual rules apply that the findings of the trial court will not be disturbed if supported by the evidence." Johnson v. Johnson, 228 Minn. 282, 284, 37 N. W. (2d) 1, 2.

The policy involved contains the usual clause found in such insurance and provided:

"The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits."

The garnishee's claim of lack of co-operation is based upon discrepancies between reports given by defendant prior to the trial and his testimony at the trial. In statements given to the garnishee's adjuster prior to the trial, the defendant said:

"We were traveling north on hy. 53 at about 50 MPH. * * *

"I was going along on the east half of the hy. which is my lane of traffic when all of a sudden the car started to sway. Just before that I heard the noise in the rear of my car. The moment I heard the noise the car started to sway. * * *

  *   *   *   *   *

"On the trip from Duluth my brother was awake. We two were talking. He never mentioned anything to me about driving too fast. He never complained about my driving. * * *

"* * * The car was in good shape. The brakes were in good condition & the steering apparatus was also in good order.

  *   *   *   *   *

"* * * On the way to Duluth I told my brother, "I have a poor tire on the car so I have to take it easy!' He knew that I had a poor tire so I had to take it easy."

At the trial defendant testified:

"Q. Have you any idea or approximate idea as to the speed that you were traveling when this blowout occurred and the car continued on?

"A. The speedometer didn't work so I wouldn't say; I was going right along—I must have; otherwise I wouldn't have rolled. That is all I remember.

"Q. Would you say that you were going 65 or more miles per hour at that time?

"A. I had been going over 60.

"Q. You feel quite sure that you were going more than 60 at that time?

"A. Oh, yes.

"Q. Is that right?

"A. That is right.

"Q. If you were traveling at a reasonable rate of speed do you feel that you could have controlled the car so as to have avoided having it go in the ditch?

\* \* \* \* \*

"Q. Do you feel that if you were driving at a reasonable rate of speed that you could have controlled the car so that it wouldn't have tipped over or gotten off the highway?

\* \* \* \* \*

"A. I could have controlled it, yes. It is a heavy car and I could have controlled it if I wasn't going too fast.

\* \* \* \* \*

"Q. So that you think it was because of the speed there that the car wound up in the ditch?

"A. I think so."

It is quite obvious that there are serious discrepancies between the statements of defendant before trial and his testimony at the

trial. However, it was for the trial court to determine whether the discrepancies were intentional so as to constitute a lack of cooperation or whether there was some plausible explanation for the difference. In explanation of the report given to the insurer prior to the trial, defendant testified that he gave the representative of the insurer some of the details respecting the accident and that others were filled in by such representative. Characteristic of his explanation is the following:

"Q. Well, did you give him that statement in a car?

"A. I didn't give him no statement. I just answered the questions he told me to answer. I was answering his questions. This isn't my wording of the accident; this is the insurance man. I was answering his questions, and he told me to sign.

"Q. And it is your testimony, is it, that after he asked you questions all you did was sign?

"A. Well, he told me this was for the settlement of my car, that is all he said. He said, 'I will word it so it will be an easy settlement made'; that is what he told me—that is his words. He said, 'We need a statement to make a settlement,' and he said 'the better statement we send in the easier to settle,' that is all, so I figured as long as I had insurance that protected my car, I said there was no sense signing it. He knew as well as I did."

On this issue there is evidence to support the trial court's finding; consequently, it must be affirmed.

Affirmed as to both appeals.