[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In order to better understand this case, some background information is necessary. On October 24, 1996, the defendant Kevin Grady was residing in the home of his mother Dorothy Grady at 437 Booth Hill Road, Trumbull, Connecticut. On said date he claims to have fallen while ascending the garage-to-living room stairs of those premises. He claims he suffered severe injuries because of his fall occasioned by his mother's negligence in maintaining a defective railing to these stairs. Mr. Grady died in Florida on December 7, 1999, and his sister, Colleen Douglas, has been appointed his administratrix in a Florida probate proceeding. As a result of these injuries, Mr. Grady brought suit in Connecticut against his mother with a return date of March 3, 1998, in docket number CV98 035 05 11 S.
At the time of her son's injuries, Mrs. Grady was insured by the Twin City Fire Insurance Company and turned the defense of this matter over to it. With a return date of June 22, 1999, Twin City sued Kevin and Dorothy CT Page 8330 Grady seeking a declaratory judgment specifically seeking in its Substituted Complaint of June 3, 2002:
(5) a judgment that the plaintiff Twin City Fire Insurance Company has no obligation to provide the defendant Dorothy Grady with liability coverage under their policy No. 31RB659509 issued to the defendant and effective July 14, 1996 through July 14, 1997; and,
(6) a judgment that the plaintiff has no obligation to provide Dorothy Grady with a defense to the state court action filed against her by her son.
The plaintiff alleges that the claim brought by Kevin Grady is excluded from coverage under the terms of the policy.
Specifically, the plaintiff relies on two clauses in the policy (plaintiff's exhibit 1): (1) section 2E (f) on pages 13 and 14 which states:
"(2) COVERAGE
E. Personal Liability does not apply to:
 f. Bodily injury to you or an insured within the meaning of part (a) or (b) of insureds as defined."
The policy on page 1 further defines "insured" as follows:
"Insured means you and residents of your household who are: (a) your relatives or (b) other persons under the age of 21 and in the care of any person named above." The plaintiff argues that Kevin Grady as the son of Dorothy Grady was clearly a relative and was residing in Mrs. Grady's household on the date of his fall.
There is no disagreement as to the relative status of the parties or the fact that Kevin Grady was residing in his mother's house at the time of the accident. The defendants, on the other hand, argue that Kevin Grady resided separately from his mother, was not a member of her household and therefore the exclusion in the policy does not apply to him even though he lived with her.
The determination of that issue is a factual matter and must be determined based on the facts of the case. Only two witnesses testified, Mrs. Dorothy Grady and her daughter, Colleen Douglas. They described the family life both before and after Mr. Grady went to Florida. CT Page 8331
The family, comprised of Mrs. Grady, her husband, three daughters and one son, Kevin, resided in a ranch style home at 437 Booth Hill Road in Trumbull during the children's school years. The house had three bedrooms, one bath with the garage under the living area of the house. Kevin Grady graduated from Trumbull High School and the family appeared to live a normal life. Shortly after his graduation, Kevin moved to Florida where he remained for approximately fifteen years. He then returned to Connecticut and immediately took up residence with his mother at the Booth Hill Road property. There is no evidence that he looked for any other accommodations. While it is unclear exactly when he returned to Connecticut, his mother recalls that it was about six years before his fall. There is no evidence that Kevin Grady lived anywhere else but his mother's home upon his return to Connecticut.
Upon Mr. Grady's return, his old bedroom had been converted to a den so he occupied one of his sister's bedrooms. His mother maintained the master bedroom. He and his mother shared the single bathroom in the house. Entry to the house was either through the garage or the front door. Mr. Grady had a key to the front door which he used 98 percent of the time. Mr. Grady was a restaurant chef and ate most of his meals out of the house or brought it home with him. Only on rare occasions did he eat inside with his mother. His work hours were usually from late afternoon to late evening and there was little opportunity for social contact with his mother. She testified that he usually slept most of the day, certainly through the breakfast and lunch time frames. He had his own television in his room and spent most of his time there.
Mr. Grady paid his mother $50.00 per week towards her expenses in running the house. Mrs. Grady was unable to assign any real additional costs to her occasioned by her son's return to her house. Her expenses did not go up. She concluded that she did not think it was a good idea to let him live there for free. Her home at 437 Booth Hill Road was not zoned for use as a multi dwelling home. She did not report the $50.00 payment her son paid her weekly on her tax returns as income. In fact, when she was first inquired of by the insurance company, she denied getting any support from her son. There was no lease in writing between them. He had access to the whole house, but he basically stayed in his own room. His mother did provide him with a cabinet in the kitchen and one in the garage for storage of canned food items and other personal belongings. He had his own refrigerator in the garage. He used her phone, albeit not very often. He did not have his own phone. He received his mail at his mother's home. He had a motorcycle which he used for transportation, but he did use his mother's car infrequently, usually to get gas for her. In fact, on the day of his fall, he had gotten her gas and had just returned her car to the garage. Again, he did some occasional yard work for her but it was infrequent. There was only one CT Page 8332 bill for each household utility which his mother paid. Both of them did their laundry out because the washer was broken.
There is no doubt that the relationship experienced between Mrs. Grady and her son, Kevin, had changed from the time he was in high school and the date of his accident, almost twenty years later. He went from a young man living with his parents and subject to their authority to an adult with a job, his own friends and responsibilities. There was no evidence of any hostility between him and his mother that in any way affected their relationship. It was his occupation and working hours that made for a lack of opportunity for social interchange, not some decision either one of them made not to communicate. He was simply sleeping most of the day and then in late afternoon went to whatever restaurant he was working in. It was testified by both his mother and sister that he was invited to and did attend most holiday events unless he was working.
In argument on a Motion for Dismissal, Kevin Grady's attorney basically argued that he could have maintained a separate household outside of his mother's home. Certainly, no evidence was offered to support that assertion, and certainly, it is unlikely that he could have gotten it for $50 a week. But assuming it to be true, instead of going to another place, Mr. Grady immediately upon returning to Connecticut moved in with his mother and resided with her for the next six years before his accident. It is equally unlikely that his mother would have leased her premises to an outsider and shared her only bathroom with that person. She certainly never indicated that she had considered that. She offered no evidence of financial hardship that would have necessitated leasing any of her home to anyone. They lived together for one reason, they were mother and son.
The court has already quoted the policy language upon which the plaintiff relies to exclude coverage in this case. It is described generally as the household exclusion.
As noted by the Maryland Court in Peninsula Insurance Company v.Knight, 255 A.2d 55, 58 (1969)
"the purpose of the exclusion is so obviously to protect the insurer against collusive or cozy claims, to exempt him from liability stemming from one whose natural ties and pulls are likely to favor a claimant who lives in the same household, that the courts have unhesitatingly recognized that purpose and excluded from policy coverage claimants who live in the same household as the named insured. State Farm Mutual Automobile Ins. Co. v. James, (4th Cir.), 8 F.2d 802, CT Page 8333 803-4; Tomlyanovich v. Tomlyanovich, 239 Minn. 258, 58 N.W.2d 855, 862, 50 A.L.R.2d 108; Puller v. Puller, 380 Pa. 219, 110 A.2d 175, 178; State Farm Mutual Automobile Insurance Co. v. Ward, (Mo.), 340 S.W.2d 635."
The specific purpose of this exclusion is to safeguard insurance companies against unnatural and inevitable partiality of the assured to an injured person if he should happen to be a member of the same family circle. This purpose, manifest to any reasonable person, was well described in Cartier v. Casualty Co., 84 N.H. 526, 528, 153 A. 6, 7
(1931), as follows: "In considering the purpose of the excepting clause of the policy, it is clear enough that it was meant to avoid the insurer's liability to indemnify for injuries to members of the insured's household, whether or not [she] was its head. The natural tendency of one insured to strengthen or enlarge the evidence of liability to members of [her] household for accidents insured against increases the hazard of liability under the policy in such cases over that for accidents to others. Without actual dishonesty, the disposition to favor those close to one reflects itself in opinions and judgments, and one insured is more likely to concede by admission or non-resistance blame for hurting a member of [her] household than for doing harm to others." Id. at 803-804.
The policy in this case excludes coverage for injuries to a "resident of [the insured's] household." These words, or words of similar substance, form the exclusionary clauses that occasionally are used in liability insurance policies. Couch on Insurance 2d (Rev. ed.) § 44A:92, at 127-28 (1981).
 It is well established that a provision exempting a compensation insurer from liability for injuries to persons living on the insured's premises or members of his household is valid, on the basis that it prevents collusion between an injured person and blood relative or members of insured's household.
Id.
Here, Dorothy Grady is the defendant in the underlying lawsuit entitledGrady v. Grady. However, as a practical matter, she is also the plaintiff since she is a beneficiary of her deceased son's estate.
Under the express terms of the subject policy, personal liability benefits do not apply to Dorothy Grady or an "insured" within the meaning of part (a) or (b) of insured as defined, which definition includes CT Page 8334 residents of her household who are her relatives.
In this case, the words of the applicable homeowner's liability policy and personal liability provision are clear and unambiguous that personal liability coverage does not apply to a resident of Mrs. Grady's household who is her relative.
 Where the terms of a policy are "clear and unambiguous", there is no room for construction. Flint v. Universal Machine Co., 238 Conn. 637 (1996). A contract of insurance "must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy." Id. at 643. See also Cox v. Peerless Ins. Co., 774 F. Sup. 83, 86 (D. Conn. 1991).
 "A court should avoid ingenious readings of contractual language and microscopic analysis to conjure up ambiguities where none exists. A certain unavoidable degree of ambiguity is inherent in almost all contractual provisions, indeed, all language. In evaluating the intentions of the parties as expressed in the language used in a contractual provision, the focus is not simply on whether more precise language could have been used, but whether the language that was used is ambiguous when fairly read." Peerless Insurance Company v. Gonzalez, 1996 WL 521163 (Conn.Super.) (Levine, J.).
Our Supreme Court in the case of Griffin v. Security Ins. Co. ofHartford, 167 Conn. 450 (1975), concludes that the words of this policy are not ambiguous.
Both parties cite and rely on the case of Griffith v. Security Ins.Co. of Hartford, 167 Conn. 450 (1973). The facts in that case are entirely different from this case. In that case there was no question but that the plaintiff's father resided at another location. In this case it is admitted that both mother and son resided at the same location.
What is instructive about the case is its statement that:
Over the years many courts have been faced with the similar problem of deciding whether on a given state of facts individual persons are members of a particular household and in each case the decision has depended upon the particular factual circumstances involved. These factual circumstances are so varied that the CT Page 8335 decisions themselves are of little precedential value.
The court does go on to state:
 The common and ordinary meaning of "household" as defined in Websters Third New International Dictionary is: "Those who dwell under the same roof and compose a family: a domestic establishment; specif: a social unit comprised of those living together in the same dwelling place." To the same effect see 41CJS 367; see also Rathbun v. Aetna Casualty Insurance Co., 144 Conn. 165. 169 (1996)
The defendants main argument seems to rest on the fact that Kevin Grady upon his return from Florida and taking up residency with his mother began paying his mother $50.00 per week towards her expenses or in other words for room and board. That issue seems to have been put to rest inRathbun, supra. In that case ma Rathbun had resided with her two brothers and her mother before she was married and paid room and board. After she married, she moved away with her husband. However, on his entry into the service, she stored their furniture and moved back to live with her mother and brothers. She resumed paying room and board. On that subject, the court stated on page 169, "In the case at bar, the fact that Ina and Josuah were living with their mother and that Ina was contributing to the support of the family group manifests a single household."
In light of all the facts previously found by the court in this case, it concludes that the plaintiff has proven the fact that Kevin Grady at the time of his fall and injury was residing with his mother as a member of her household and therefore judgment will enter for the plaintiff that
1. it has no obligation to provide the defendant Dorothy Grady with liability coverage under policy no. 31RB659509 issued to the defendant for the period July 14, 1996 through July 14, 1997; and,
2. a judgment that the plaintiff has no obligation to provide Dorothy Grady with a defense to the state court action filed against her by her son.
___________________ GORMLEY, J. CT Page 8336